### J. B. AMMONS V. ANNETTE M. DWYER.

#### No. 6546.

1. **Proof of Lost Deed, Itself an Ancient Instrument.** — See testimony held competent to show the existence and contents of a lost deed, assertion and claim of title under it.

2. **Same.**—See testimony held sufficient to establish by circumstantial evidence the existence and execution of an ancient instrument.

3. **Ancient Record of Deed.**—The registration of a deed made more than thirty years before the trial held competent as a circumstance, although the certificate of acknowledgment to the deed was imperfect and the registration was not in the proper county. It was proved that the deed relied upon and sought to be proved was identical in its contents with the recorded deed.

4.  **Deed of Partition—Description.**—A deed of partition allotted to one of the parties "two leagues of land situated on the Atascosa Creek, in Live Oak County, 4605," the inventory of the estate showing a like description, is competent evidence to support title to one league which belonged to the estate on the named creek and county.

5.  **Same—Tenant in Common.**—The plaintiff showing title under an heir to whom the land sued for was allotted in the partition, the exclusion of the partition deed would not defeat the right to recover against one showing no title.

6.  **Tax Deed — Description.** — A league and labor of land fronting on a stream with twenty-six courses in the meanders of the river front extended back 8000 varas at one of the side lines.  A tax deed purporting to convey 4000 acres of the survey "lying in the shape of a square in the manner prescribed by law" was excluded.  *Held,* the tax deed described no land and was properly excluded when offered to support limitation of five years.

7.  **Description in Deed.**—A deed calling for a part of land described in another deed void for want of sufficient description is itself wanting in sufficient description, there being no metes and corners given identifying the land.

8.  **Ancient Instrument.**—A deed thirty years old or over, coming from the proper custody and free from suspicion, is admissible in evidence as an ancient instrument, without proof of accompanying possession or other acts of ownership corroborative of its genuineness.

9.  **Charge—Lost Ancient Instrument.**—See charge of court, supplemented by a charge asked by the defendant, held sufficient to direct the attention of the jury to the necessity of the plaintiff proving both the existence and genuineness of the instrument shown to have been lost, as well as its execution.

10.  **Rent May be Recovered as Damages.**—The plaintiff seeking the recovery of land and "for her damages and costs" is entitled, upon recovery of the land, to recover rents when proved.

11.  **Claim for Improvements.**—In an action to recover land the claim by the defendant for the value of improvements made upon the land during his possession of the land in good faith will open up the question of the rental value of the premises recovered.  Rev. Stats., arts. 4814, 4815.

APPEAL from Live Oak.    Tried below before Hon. D. P. Marr.
The opinion contains a statement.

*Browne & Beasley* and *J. M. Eckford,* for appellant.— 1.  It is not competent to prove the execution and contents of a lost deed which purported to have been made in 1852, more than thirty years before the trial, and to have been witnessed by two witnesses and duly acknowledged before an officer, by a stranger to the deed, who first saw the deed twenty-eight years after its purported execution, and who is not shown to have been acquainted with either of the parties to the deed or with the subscribing witnesses, or with the officer who took the acknowledgment, or with the handwriting of either of them, or to have been present at the execution of the deeds, and especially without first accounting for the absence of the subscribing witnesses and other parties to the purported instrument.   Houston v. Blythe, 60 Texas, 510; Dotson v. Moss, 58 Texas, 153, 154; Holmes v. Coryell, 58 Texas, 688.

2.   In order that a copy of a lost deed, certified from the record of the same, may be introduced in evidence under the statute two things must

concur; first, the deed must be properly authenticated for registration; second, the registration must be made in the county where the land lies that is conveyed by the deed; and if either of these requisites be wanting the certified copy is inadmissible under the statute.   McDaniel v. Needham, 61 Texas, 271, 272; Adams v. Hayden, 60 Texas, 226.

3.   A deed more than thirty years old under certain circumstances is admissible in evidence as an ancient instrument; and if such a deed be recorded more than thirty years before the trial, and the original can not be produced at the trial, a certified copy from said record of said deed is admissible as an ancient instrument under the same circumstances as the original would be, but to entitle such a copy to be so admitted the original deed must have been duly authenticated for registration and the record of it made in the county where the land lay.   Broxson v. McDougal, 63 Texas, 197; Brown v. Simpson's Heirs, 67 Texas, 225; The State v. Cardinas, 47 Texas, 287; Holmes v. Coryell, 58 Texas, 688.

4.   A writing purporting to be a copy of an instrument, and offered in evidence to prove the execution and contents of said instrument, must either be made evidence by statute or be an examined copy, otherwise it will be inadmissible.   The State v. Cardinas, 47 Texas, 289.

5.   If a deed containing a description of land be offered in evidence by a party to a suit to support his plea of the statute of limitation of five or ten years, and the description is plain on the face of the deed and purports to embrace a part of the land in suit, and the deed is duly executed and properly recorded, the question as to whether the deed describes the land claimed by the party offering it is a matter for the determination of the jury and not the court, and it should be allowed to go to the jury. Brown v. Chambers, 63 Texas, 135; Montgomery v. Carlton, 56 Texas, 433; Norris v. Hunt, 51 Texas, 609; Flanagan v. Boggess, 46 Texas, 330.

6.   A deed to prove itself as an ancient instrument must be thirty years old, must come from the proper custody, must be free from suspicion, and must have been acted on so as to give some corroborative proof of its genuineness.   Holmes v. Coryell, 58 Texas, 688; Cox v. Cock, 59 Texas, 521; Gainer v. Cotton, 49 Texas, 118; Williams v. Conger, 49 Texas, 596.

*Edward Dwyer, J. D. Morrisson,* and *L. N. Walthal,* for appellee.— 1.   When it is proved that a deed is lost, destroyed, or mutilated, or is out of reach of a subpœna *duces tecum,* secondary evidence is admissible to prove its existence, execution, and contents; and those who have had it in their possession, seen it, and acted upon it are competent to testify relative to such a deed, especially when such a deed is ancient and the subscribing witnesses are beyond the jurisdiction of the court or from lapse of over thirty years presumed to be dead.   Mapes v. Leal's Heirs, 27 Texas, 345; Lewis v. San Antonio, 7 Texas, 288; Stroud v. Springfield, 28 Texas, 663; Newby v. Haltaman, 43 Texas, 314; Clifton v. Lilly, 12

Texas, 130; Ames v. Hoy, 12 Cal., 11; Collier v. Corbett, 15 Cal., 183; Poster v. Rassette, 5 Cal., 469; 1 Greenl. Ev., secs. 509, 557, 570; 2 Phill. Ev., note 231, pp. 421, 422, 368, 369, note 197, and cases there cited; Winn v. Patterson, 9 Pet., 663.

2.    A copy of a lost deed proved by competent testimony to be a copy is admissible in evidence, not as a record but to prove the contents of the lost instrument.  Newby v. Haltaman, 43 Texas, 314; Schifflet v. Morelle, 68 Texas, 382; Dunn v. Choate, 4 Texas, 13; White v. Burney, 27 Texas, 50; 2 Phill. Ev., 459, 460; 1 Stark. Ev., 349, 350; Jackson v. Rice, 3 Wend., 183.

3.    Where it is proposed to prove by parol evidence the existence, loss, and contents of an original deed outside of the statute, the rules of evidence at common law and in equity govern.    Rev. Stats., art. 2245; Vandergriff v. Piercy, 59 Texas, 371.

4.    Less specific evidence is required of the contents and existence of an ancient deed than of one recently executed.  Parks v. Caudle, 58 Texas, 216; Stroud v. Springfield, 28 Texas, 663; Mapes v. Leal's Heirs, 27 Texas, 349; 1 Greenl. Ev., secs. 21, 144.

5.    A deed proved to be over thirty years old, and coming from the proper source — that is, from the custody of those claiming under it — and free from any just ground of suspicion, and that has been acted upon in such manner as affords corroborative proof of its genuineness, is admissible in evidence without any other proof of its execution, the subscribing witnesses being presumed by law to be dead and other proof beyond the reach of the party offering such deed; and possession under such a deed is not essential.  Holmes v. Coryell, 58 Texas, 688; Pasture Company v. Preston & Smith, 65 Texas, 451; Jackson v. Laroway, 3 Johns. Cas., 283; Hewlett v. Cock, 7 Wend., 371; Robinson v. Craig, 1 Hill, 389, 391, 392; Henthorrn v. Doe, 1 Blackf., 156, 162; Winn v. Patterson, 9 Pet., 674, 675; Thompson v. Bullock, 1 Bay, 364.

6.    A tax deed of an assessor and collector, void upon its face for want of sufficient certainty in the description of the land it purports to convey, will not support the plea of five years limitations under the sixteenth section of the statute.    Wofford v. McKinna, 23 Texas, 36; Kilpatrick v. Sisneros, 23 Texas, 135; Waters v. Spofford, 58 Texas, 115.

7.    Parol testimony is not admissible to explain a latent ambiguity in a tax deed, but the tax deed must stand or fall on the description embraced in it, irrespective of extrinsic testimony.  Wofford v. McKinna, 23 Texas, 36; Kilpatrick v. Sisneros, 23 Texas, 135; Blackw. Tax Tit., 152,156.

8.    Where the plaintiff alleges and prays for damages in an action of trespass to try title and the defendant sets up and claims improvements in good faith, the plaintiff may recover and offset his mesne profit or rent against the value of the improvements.  Rev. Stats., arts. 4813, 4815; Bien-

court v. Parker, 27 Texas, 558; Miller v. Brownson, 50 Texas, 583; House v. Stone, 64 Texas, 677.

COLLARD, JUDGE.—Suit in form of trespass to try title, brought December 14, 1886, by Annette M. Dwyer, as executrix of the will of Joseph Dwyer, against I. B. Ammons, J. C. Horst, J. G. Ussery, and G. W. Brackenridge, to recover a league and labor of land in Live Oak County granted to Isabel Jordan on the 4th day of July, 1835, as a colonist in the colony of McMullen & McGloin.

The defendants J. G. Ussery and G. W. Brackenridge answering, disclaimed any interest in the land in controversy.

The defendant J. C. Horst pleaded general demurrer, general denial, and disclaimed as to all of the land sued for except a subdivision thereof containing 1333⅓ acres, which was described in his answer by metes and bounds, and as to which he pleaded not guilty and the statute of limitations of five years.

The defendant I. B. Ammons filed an answer embracing a general demurrer, a plea of general denial, a disclaimer as to all of the land sued for except two tracts or subdivisions thereof, each containing 1333⅓ acres and each described in his answer by metes and bounds and as not embracing any of the land claimed by his codefendant Horst, and as to the two said tracts of land he pleads not guilty and the statute of limitation of five and ten years, and suggested improvements made in good faith aggregating the sum of $2572.

A trial was had at the March Term, 1888, before a jury, who by their verdict found for the defendant Horst the tract of 1333⅓ acres claimed by him under his plea of the statute of limitation of five years, for the plaintiff for the balance of the land sued for, and for the defendant Ammons on his plea of improvements in good faith the sum of $2570, less the sum of $432.32 to be deducted for rents; and that the value of the land without the improvements was $1.50 per acre.

Judgment was entered in accordance with the verdict. Defendant Ammons alone appealed.

He assigns errors as follows:

"1. The court erred in admitting in evidence the testimony by deposition of J. W. Leisering to the existence, contents, and execution of the deed from Isabel Jordan to Edward Dwyer dated October 8, 1852.

"2. The court erred in admitting in evidence the testimony of J. C. Cade as to the existence, contents, and execution of the deed from Isabel Jordan to Edward Dwyer dated October 8, 1852.

"14. The court erred in admitting in evidence the testimony of J. F. Leisering about his (Leisering's) contract with Joseph E. Dwyer about the former's employment to recover the land in controversy for said Dwyer, because said testimony was incompetent.

"3. The court erred in admitting in evidence the certified copy from the records of Bexar County of the deed from Isabel Jordan to Edward Dwyer dated October 8, 1852, and erred in admitting in evidence said paper, in connection with the testimony of J. H. Leisering and J. C. Cade, as to the existence and contents and execution of such a deed.

"4. The court erred in admitting in evidence for any purpose the certified copy from the records of Bexar County of the deed from Isabel Jordan to Edward Dwyer dated October 8, 1852, and erred in admitting the parol testimony of witnesses Cade and Leisering as to the execution, existence, and contents of said deed."

Affidavit of the loss of the original deed was filed and proof of loss made.

J. F. Leisering's testimony was as follows: "My name is J. F. Leisering; my age is 53, and place of residence San Diego, San Diego County, State of California. I resided on the 13th day of October, 1879, in Oakville, Live Oak County, Texas. I had resided in the same place from 1859 until 1884. I was and am acquainted with Joseph E. Dwyer, of San Antonio, in Bexar County, Texas. I knew him since about the year 1876. I did make as attorney a contract on or about the 13th day of October, 1879, in relation to the Elizabeth Jordan league and labor of land situated in Live Oak County, a copy of which contract is attached to the interrogatories accompanying this deposition. The nature of my employment was to effect a settlement between the said Joseph E. Dwyer and I. B. Ammons of their respective claims to said league and labor of land amicably and as expressed in said contract, and a deed from Isabella Jordan to Edward Dwyer was placed in my hands by Joseph E. Dwyer; this deed is of record in the records of Live Oak County, Texas. These papers were placed in my hands as evidence of Joseph E. Dwyer's title. This deed conveyed the same league and labor—lands consisting of 4605 acres of land. To the best of my recollection I returned said deed to Joseph E. Dwyer. I do not know where it is now. In endeavoring to make an amicable settlement between Ammons and Dwyer I turned the deed over to Dwyer, and that is the last I recollect of it. I never made any search for it after that. The deed conveyed a league and labor of land on the west side of Atascosa Creek, in Live Oak County, Texas, to Edward Dwyer from Isabella Jordan, which was made and acknowledged in the city of New Orleans, State of Louisiana; the date I do not remember. That is all I know of this deed or its terms, witnesses, or acknowledgment. I have examined the paper attached to the interrogatories, and it is the same that was executed by Joseph E. Dwyer and myself, and on the 13th day of October, 1879."

Cade testified: "That in about the year 1882 J. F. Leisering went from Oakville to Laredo, and that he turned over to witness a paper purporting to be an original deed of conveyance from Isabella Jordan to Edward Dwyer; * * * that to the best of his belief he filed the deed he

had with the clerk of the County Court of Live Oak County to be recorded; that he subsequently delivered the deed to Leisering; that his attention was called to the field notes in the paper he saw, and that they were the same as the Elizabeth Jordan survey; * * * that the deed he had was signed by Isabella or Isabel Jordan; that he did not remember that there were any attesting witnesses to it; that he did not remember whether the grantor signed her name by a mark; that he remembered that the deed was acknowledged before an officer in New Orleans; that he did not remember that the deed had any certificate of record of the County Court of Bexar County; that he could not say as to the age of the deed, but it looked like it was several years old; that the deed he saw was dated in the 40's or 50's to the best of his recollection."

Cade also testified when the certified copy of the deed from the records of deeds of Bexar County was handed to him that to the best of his recollection it was a copy of the instrument which he had and which appeared to be an original deed. The copy of the deed shows that the original title was delivered to the vendee "as a part and parcel of the conveyance," and it was proved that the original title in Spanish was found among the papers of Joseph E. Dwyer, deceased (whose deraignment of title is from the original grantee), under whose last will the plaintiff as executrix brings this suit. This original grant in Spanish was produced in court on the trial by plaintiff. The authentication of the deed as shown by the copy is as follows:

"*State of Louisiana, City of New Orleans.*—Before me, Edward Hall, a commissioner of the State of Texas, personally appeared Isabel Jordan, to me satisfactorily made known, who signed her name by a mark, and John Sullivan and J. G. Malloy signed the same as witnesses in my presence, for the consideration and purposes therein stated (in said deed). In testimony whereof, I hereunto set my hand and seal of office, this 8th day of October, A. D. 1852." With his signature and seal added.

The certificate of record in Bexar County shows that the deed was filed there for record on the 5th day of July, 1856, and recorded on the 28th day of November, 1856. It purports to have been executed in New Orleans, Louisiana, and to have been witnessed by John Sutherland and J. G. Malloy. The signature is by mark.

Ammons testified that J. F. Leisering showed him the deed in 1879 and that it then looked like it was of recent date. In October, 1879, Joseph E. Dwyer authorized Leisering to prosecute in the courts or bring to an amicable adjustment Dwyer's claim to the league, for which he was to pay Leisering $200, the sum of $50 on November 1 following and the balance after final successful result, Dwyer to have complete control of the mode of settlement.

None of the assignments of error above copied can be sustained. The evidence objected to was relevant and competent. The testimony of Leis-

ering and Cade tended to establish the existence of the lost deed, its age, that it came from the proper custody, assertion of title and acts of ownership under it by the person claiming, its genuineness, and contents. The copy from the record of deeds of Bexar County was not admitted as a recorded deed, because of defective acknowledgment and because the land did not lie in that county, but for other purposes. Objections were sustained by the court to its admission as a certified copy of a recorded instrument. The evidence of Cade in reference to it was important. He had seen and had in his possession what purported to be the original, and testified that his best recollection was it was a copy of the deed he saw; and the certificate of the clerk showed that it was recorded in 1856, thirty years before the trial, a pertinent fact in establishing the antiquity of the original. Newby v. Haltaman, 43 Texas, 314. The subscribing witnesses were presumed to be dead. Mapes v. Leal's Heirs, 27 Texas, 346; Stroud v. Springfield, 28 Texas, 649; Winn v. Pattison, 9 Pet., 663; Schifflet v. Morelle, 68 Texas, 382; Holmes v. Coryell, 58 Texas, 58; 58 Texas, 685; Parks v. Caudle, 58 Texas, 216.

Plaintiff deraigned title as follows:

1. Original grant to Isabel Jordan, date July 12, 1835.

2. Evidences of her deed to Edward Dwyer October 8, 1852.

3. Will of Edward Dwyer, deceased, with its probate in 1854, in which all the testator's property is devised to his wife Mariana Leal y Dwyer and four children, Anita, Jose, Thomas, and Maria; the wife, Mariana, being named as executrix, and who is authorized to divide the property into five equal parts, one for herself and one for each of the children. In connection with the will and deed of partition the inventory was read in evidence, which in the list of lands includes " two leagues and labors of land on the Atascosa Creek, in Live Oak County."

4. Deed of partition by Mariana Leal y Dwyer, executrix, between herself and the children as provided in the will allots and conveys to herself land described as follows: " Two leagues of land situated on the Atascosa Creek, in Live Oak County, 4605." The deed dated May 16, 1860.

5. Will of Mariana Leal y Dwyer, duly probated August 26, 1867, devising all her property to her son Joseph E. Dwyer and her daughter Anita Dwyer.

6. Deed of partition between Joseph E. Dwyer and Anita, dated January 9, 1874, in which the Isabel Jordan grant of land is conveyed to Joseph E. Dwyer.

7. Will of Joseph E. Dwyer, duly probated November 17, 1884, in which the plaintiff Anita M. Dwyer is named as executrix.

8. Plaintiff also introduced in evidence a written agreement between Joseph E. Dwyer and I. B. Ammons of date February 11, 1882, to the effect that as each of them claimed to own the Jordan league and labor

in fee simple, each should act as the agent of the other for the sale of the land, sharing equally in the proceeds of sales, and that a ratification of sales should be made by both before the execution of a deed by either.

It is claimed by plaintiff that Ammons violated this agreement by selling $2666\frac{2}{3}$ acres of the land without accounting to Joseph E. Dwyer or his executrix therefor, and thereby forfeited his right thereunder. It was proved that he sold $1333\frac{1}{3}$ acres of the land to Ussery and $1333\frac{1}{3}$ acres to Givens. He claimed no rights under the agreement.

The sixth assignment of error is: "The court erred in admitting in evidence the inventory of the estate of Edward Dwyer and the deed of partition between Mariana Leal y Dwyer dated May 16, 1869 (offered together by plaintiff), because neither of said papers describes the land in controversy and no effort was made to identify the lands therein mentioned as the lands in controversy."

There was no objection on the trial to the inventory—it was confined to the deed of partition.

The deed was evidently intended to partition and set apart to Mariana Leal y Dwyer the two leagues of land belonging to the estate of Edward Dwyer situated on Atascosa Creek, in Live Oak County, as listed in the inventory. If the estate had two leagues on the creek the description would apply to them and the deed would convey them; if it had but one league we think the estate's title to it would pass by the deed. The league in controversy is shown to be on the Atascosa Creek, in Live Oak County, and answers the description in the deed to at least one of the leagues. The deed was sufficiently definite for purposes of partition between the devisees of the will, coupled as it is with the inventory and the proof of the situation of the estate's league on the creek. Had the deed failed entirely parol evidence of the partition would have been admissible. Stewart v. Baker, 17 Texas, 418.

If there had been no partition at all Mariana Leal y Dwyer would have been a tenant in common with the four children; and her interest is shown to have passed to her son Joseph E. Dwyer, whose executrix could as such tenant in common maintain this suit against defendants who have shown no title.

The seventh, eighth, and ninth assignments of error are as follows:

"7. The court erred in excluding from the evidence the following deeds when offered by the defendant I. B. Ammons as a basis for his pleas of the statute of limitations: (1) Deed of Walter Merriman, as assessor and collector of taxes of Live Oak County, dated April 13, 1860, and conveying 4000 acres of the land in controversy; (2) deed of I. B. Ammons to J. M. Ussery, conveying $1333\frac{1}{3}$ acres of the land in controversy, dated April 13, 1860; (3) deed from J. M. Ussery to I. B. Ammons, dated 20th December, 1872, reconveying said $1333\frac{1}{3}$ acres to I. B. Ammons.

"8. The court erred in excluding from the evidence the deeds from

Merriman to Ammons, Ammons to Ussery, Ussery to Ammons, described in the seventh assignment above, when offered by the defendant I. B. Ammons as a basis of his pleas of the statute of limitations in connection with the following deeds: (1) I. B. Ammons to J. S. Givens, dated April 13, 1860; (2) J. S. Givens to Louis Smith, dated February 5, 1862; (3) Louis Smith and wife to J. M. Ussery, dated January 9, 1866.

"9. The court erred in excluding from the evidence the deeds from Ammons to Ussery, and Ussery in reconveyance to Ammons, when offered in connection with the other deeds described in assignment No. 8 above, as a basis of his plea of the statute of limitations of five years." ·

The tax collector's deed describes the land sold as follows: "Four thousand acres of land of a league and labor of land situated on the west bank of the Atascosa Creek, in Live Oak County, originally granted to Elizabeth Jordan, lying in the shape of a square, in the manner prescribed by law, commencing at the beginning corner of the original survey of said land." The court excluded the deed because it was void for want of sufficient description.

The field notes of the original grant, as shown by a translated copy thereof brought up by certiorari, are as follows: "The first measurement was commenced on the right bank of Atascosa Creek opposite a hackberry which serves as a landmark of the possession of John McGloin and Festal Doyle, situated on the opposite bank of said creek, thence following said right bank upwards, twenty-six different courses were taken with the meanders of said stream to where a stake was set; thence south 5 west in a straight line over vacant lands 8000 varas were measured to where another stake was set; thence south 85 east on a straight line 4000 varas were measured, where another stake was set; and thence north 5 east 4025 varas were measured along the possession of Marcus Kililie to where another stake was set; thence north 85 east along said possession 1000 varas were measured to the beginning; containing 2,600,000 square varas."

The tax deed described no land. Four thousand acres in a square could not be taken out of the original survey, commencing at the beginning corner. To run from the beginning corner across to the west line would make a square, but it would contain only 2842 acres. This is the largest square that could be cut off of the survey. To run with the meanders of the creek from the beginning corner and run around 4000 acres the land would be in a very irregular shape and could not answer the description in the deed. The 4000 acres can not be surveyed in a square beginning from any point on the league and labor. The description is more indefinite by the failure to indicate the course to be run from the beginning corner, which is at a point half the length of the survey and 1000 varas west from the east line. The description given can not be satisfied out of the league and labor; it defines no land and is void in a tax deed.

The deed from Ammons to Givens of April 13, 1860, describes no land.

It describes a survey of 1333⅓ acres out of the 4000 acres conveyed by the tax deed, "being the lower part of the said 4000 acres."

Givens sold what is said to be this same land to one Smith in 1862, describing it by metes and bounds, and in 1866 Smith and wife conveyed the same land by metes and bounds to Jas. Ussery, but this tract was not reconveyed to Ammons, and he does not claim it.

The deeds from Ammons to Ussery and from Ussery back to Ammons (leaving him 2666⅔ acres in the 4000 acres) under which Ammons claims describe the land conveyed in a general way as one-third of the 4000 acres bought by Ammons from the tax collector; that is, 1333⅓ acres of the 4000 acres, and lying next to and adjoining the land sold by Ammons to Givens. Calling for the Givens tract does not better the description in this deed, even though the Givens may have been well described.

Defendant Ammons claims the unsold one-third of 4000 acres bought from the tax collector and the one-third he sold to Ussery, reconveyed by Ussery back to him. The description in the tax deed being void, the description calling for thirds of the land so described would be void. The ground upon which defective descriptions of land in tax deeds are held to be bad when the same description might be good in a deed between individuals is well understood and needs no discussion. These instruments offered to support the five years statute of limitations were properly excluded. They were read in support of claim for valuable improvements.

There was evidence before the jury from which they might have found the existence, contents, and execution of the deed from Isabel Jordan to Edward Dwyer, and it was proper to submit the questions to them.

There was evidence, though in some respects conflicting, which authorized the submission of these matters of fact as well as the age of the deed; whether it was free from suspicion and came from the proper custody, whether it had been acted on by those claiming under the Dwyer title, and whether the deed was genuine. There was no error in so submitting the facts to the jury on these points. Pasture Co. v. Preston & Smith, 65 Texas, 448; Warren v. Frederichs, 76 Texas, 652.

An assignment of error attacks the charge of the court as follows:

"16. The court erred in its charge to the jury, in that it assumes that a deed over thirty years old, coming from the proper custody and free from suspicion on its face, proves itself without any evidence that possession of the land was taken under the deed or that the parties claiming under the deed acted on it in such a manner as to afford corroborative proof of its genuineness."

One of the clauses of the charge containing the alleged error is as follows:

"In regard to said deed from the original grantor, Isabella Jordan, to Edward Dwyer, the jury are instructed that its execution has not been proved in the ordinary way by witnesses to the fact, but that the plaintiff claims that it is an ancient instrument offered under such circumstances

as in law permits the deed to prove itself. The law is that a deed over thirty years of age, coming from the proper source—that is, from the custody of those claiming under it—and free from just grounds of suspicion, or that has been acted on in such manner and at such time as affords corroborative proof of its genuineness, is admissible in evidence without any other proof of its execution."

The very question presented by this assignment of error is, Is a deed thirty years old or over, coming from the proper custody and free from suspicion, admissible in evidence as an ancient instrument, without proof of accompanying possession or some acts of ownership corroborative of its genuineness?

In Stroud v. Springfield, 28 Texas, 664, it is said that in addition to other essentials the deed must have been acted on so as to afford some corroborative proof of its genuineness.

In Holmes v. Coryell, 58 Texas, 688, it is said that upon such proof a deed will be admitted without proof of its execution, but the case does not hold that these matters of proof are all indispensable.

In the case of the Pasture Company v. Preston & Smith, 65 Texas, 451, it is held that "the preliminary proof before the judge to make a prima facie case is but an earnest of the issue, but what will be sufficient for the purpose could not probably be embraced in a definition that would suit the facts of every case."

Justice Henry delivered the opinion in the recent case of Parker v. Chancellor, 73 Texas, 478, and held that deeds over thirty years old in the custody of the parties claiming under them and free from suspicion were properly admitted as ancient instruments. The deeds were offered, however, by the defendant, who was in possession, and there was no necessity to discuss that question.

In Warren v. Frederichs, 76 Texas, 652, an ancient deed was objected to because:

1. Proof of *any action having been taken was insufficient.*
2. It did not come from the proper custody.
3. It had been attacked as a forgery.

Justice Henry, delivering the opinion of the court, said: "The deed was over thirty years old. Defendant produced it and offered evidence tending to account for its custody while it was out of the actual possession of the heirs of William Walker. The power of attorney that was testified to as having been found among the papers of Walker and referring to it was properly considered. We think that under these circumstances the ruling permitting the deed to be read was correct." The main question in the above case was that of custody, but it is noticeable that no stress is laid upon possession under the deed or acts of ownership.

The text of Greenleaf referred to in Stroud v. Springfield, *supra*, upon this subject is as follows: "Such documents (over thirty years old) must

be free from just grounds of suspicion and must come from the proper custody, *or* have been acted upon so as to afford some corroborative proof of their genuineness."

In support of the text Mr. Greenleaf cites Jackson v. Laronay, 3 Johnson's Cases, 285, 286, where it is held that possession is not essential "if such account be given of the deed as may be reasonably expected under all the circumstances of the case will afford the presumption that it is genuine. The English authorities," proceeds the opinion, "on this subject plainly distinguish between the case of an ancient deed supported by possession and by other circumstances. They expressly state that where possession has not gone along with the deed the party ought to give some account of it in order to entitle it to be read in evidence, and I think this extent of the rule is founded on reason."

Our courts have frequently declared that possession is not necessary. We conclude that where a deed is thirty years old, is free from suspicion, and is accounted for it would be admissible in evidence as an ancient instrument, and that the charge of the court on this subject was not erroneous.

Such omissions as may be noticed in the general charge of the court in relation to the proof required to establish an ancient instrument not produced on the trial are amply supplied by a special charge asked by defendants and given to the jury, as follows:

"The defendants I. B. Ammons and J. C. Horst ask the court to instruct the jury that the plaintiff in this cause, if she recover at all, must do so on the strength of her own title and not upon the weakness of the title of the defendants; that the plaintiff claims that the land in controversy was conveyed by Isabel Jordan to Edward Dwyer by deed dated in 1852; that this is a material link in the plaintiff's chain of title; that the original deed has not been produced in evidence; that neither the subscribing witnesses to the deed nor any one else has testified as to the execution of the deed; that the plaintiff has sought to prove this deed by circumstances showing its age, and by the acts of the parties claiming under it has sought to show its genuineness; and as to the law governing this mode of proving the execution of the deed the jury are instructed that the original deed not being produced, the corroborating facts should be strong to authorize the holding that a deed even thirty years old is genuine when the original is not produced and a copy from the record is relied on to show even the existence of the paper. Where acts are relied upon as corroborative they should be such as are contemporaneous with the life of the person who is claimed to have executed it, if he lived for many years after the date of the instrument, and should be open in their nature, and such as evidence a clear claim of title consistent only with such instrument as is claimed to have been made; the mere existence of the instrument is not enough without such corroboration. The burden of proving this deed rests upon the plaintiff, and unless you believe from

the evidence that this deed has been proven by the plaintiff you will find for defendants."

We will not say that this requested charge should be approved in all things, but that it is as favorable to defendants as the law would allow, and leaves them no right to complain. It is certainly, so far as defendants are concerned, a sufficient amendment to the court's general charge as to the necessary proof of an ancient instrument not produced in court. Some such charge, when the original deed is not produced, should have been given to direct the jury's attention to the necessity of proving both the existence and genuineness of the instrument, as well as its execution.

The verdict of the jury was supported by the evidence as to the existence, execution, genuineness, and contents of the lost deed, and there was no error in refusing a new trial upon the ground of insufficient proof of the facts.

Upon defendant Ammons' claim and evidence the jury awarded him as compensation for improvements made in good faith $2570, less $432 to be deducted for rent.

The court by consent of parties instructed the jury orally upon the subject of improvements. Appellant complains that no charge should have been given touching rents, and that no evidence should have been admitted in respect to the same because no rent was demanded in the petition.

The petition alleges the trespass "to her damage $5000;" it prays for restitution of the premises, to be quieted in her title, for her damages and costs. The petition does not appear to have been endorsed as required in actions of trespass to try title, but it was in form of trespass to try title. Defendant did not except to the petition on the ground that it was not properly endorsed, and thereby waived the requirement. Dangerfield v. Paschal, 20 Texas, 536. Such an omission did not affect the nature of the suit. It was for title and damages. It has been held that "mesne profits are recoverable in actions of this kind, which are brought as well to try title as to recover damages, as a part of the plaintiff's damages." Biencourt v. Parker, 27 Texas, 558. Rents are recoverable as damages.

We think the issue of use and occupation was made by defendant's claim for an allowance for improvements. The statute provides that rents may be offset against the value of improvements in this character of suit when the value of improvements are allowed. We think this may be done whether the plaintiff demand rents or not. Rev. Stats., arts. 4814, 4815.

We find no reversible error committed on the trial, and conclude that the judgment of the court below should be affirmed.

                                                                *Affirmed.*

Adopted November 18, 1890.