HELEN M. HOLT ET AL. v. SAM MAVERICK.

No. 48.

1. **Ancient Instrument — Presumption — Heirship.**—A cancelled endorsement of a surveyor on the back of a certified copy of a land certificate from the General Land Office, when the certificate and endorsement are over thirty years old, is admissible in evidence as a circumstance to show plaintiffs' ancestor was the person to whom the certificate was issued. The admission of instruments as ancient applies not only to deeds, wills, and bonds, but also to receipts, letters, entries, and all other ancient writings.

2. **Same — When Attacked.** — When an ancient instrument is attacked, and there is a conflict of evidence about any of its essentials, the issue should be submitted to the jury.

3. **Secondary Evidence—Sheriff's Deed—Judgment.**—The life of a sheriff's deed is a valid judgment and valid execution, and secondary evidence of the existence of the judgment and its contents may be offered; but when a docket of a justice of the peace is found, and a certified copy of its contents is offered in evidence, the evidence of the justice rendering the judgment as to its contents is inadmissible.

4. **Entry—Judgment.**—The failure of the justice to enter judgment does not destroy it; yet the record entry of the judgment is indispensable to furnish the evidence of it, when it is made the basis of a claim or defense in another court.

APPEAL from Kinney. Tried below before Hon. WINCHESTER KELSO.

*James B. Goff* and *C. C. Clamp*, for appellants.—1. The endorsement was the official act of a surveyor and an archive, a copy of which the Commissioner had authority to certify; and the copy was competent evidence in connection with other facts proved to identify plaintiffs' ancestor as the owner of the certificate; and having the requisites, was admissible as an ancient instrument. Adams v. Anderson, 59 Texas, 481.

2. The testimony of Buquor was inadmissible to prove the existence or contents of the judgment until it had been shown it once existed, and was lost and could not be found. Pasch. Dig., arts. 1182, 1183; French v. McGinnis, 69 Texas, 19; Williams v. Davis, 56 Texas, 250; Harvey v. Cummings, 68 Texas, 599.

*Perry J. Lewis*, for appellee.—1. The endorsement was not a part of the certificate nor an archive of the Land Office, and could not properly be proven by a certified copy from the Commissioner of the General Land Office. The endorsement is not an official act of a surveyor, but a mere memorandum, is cancelled, and is no part of the records of the Land Office. Rogers v. Pettis, 15 S. W. Rep., 1093; Gaither v. Hanrick, 69 Texas, 92; Carrington v. Potter, 37 Fed. Rep., 767.

2. There was no error in permitting the witness Buquor to testify as to his rendering the judgment, because the testimony of the justice who

rendered the judgment is primary evidence of the fact that judgment was rendered; and even if not primary, the predicate laid to authorize such proof was sufficient.   O. & W. Dig., art. 1124; 1 Black on Judg., sec. 106; Murf. on Justice's Prac., sec. 347; 12 Am. and Eng. Encycl. of Law, 474; 1 Greenl. on Ev., sec. 509.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to 320 acres of land in Kinney County, granted to John Wilkinson, brought by appellants against appellee.   To this action defendant pleaded not guilty, and pleaded three, five, and ten years limitation.

Plaintiffs showed by their testimony, that they were the legal heirs of one John Wilkinson, who was a soldier of the Texas Revolution, and as such was the possessor of two bounty warrants or certificates, one for 640 acres and the other for 320 acres of land; that said John Wilkinson, in 1839, placed these certificates in the hands of James H. Selkirk, county surveyor of Matagorda County, for location on a certain league of land known as number 58, on Caney Creek, in said county; that afterwards Wilkinson returned and got the certificates and placed them in the hands of a real estate firm, to be located in North or West Texas.

D. E. E. Braman swears, that he lived in the same house with Wilkinson in 1839, and worked in an office with Selkirk, and says Wilkinson gave the certificates to Selkirk and afterwards got them again; that John Wilkinson died in 1840.   The patent was issued to the land in controversy, in 1849, to John Wilkinson.   Defendant proved by one Buquor, that in 1853 he was a justice of the peace of Bexar County; that he knew John Wilkinson intimately in the army in 1836, and on up to 1853; that he was a single man; that he, as justice of the peace, had, on May 7, 1853, rendered a judgment against said Wilkinson in favor of John E. Crawford, and issued an execution on the same, and had placed the same in the hands of W. B. Knox, sheriff of Bexar County, who had levied on and sold the land in controversy; that he had, when he went out of office, turned over his docket and papers to the county clerk of Bexar County, and had, since this suit was instituted, in conjunction with the county clerk, made diligent search for the docket and papers, and had failed to find them.

P. J. Lewis, counsel for defendant, also swore that he had made diligent search for the papers, but had failed to find them, but found a trial docket marked "Buquor," and found in it an entry of the style of the case. When asked if there was any record of judgment in the docket, objection was made by defendant and sustained.

Plaintiffs offered in evidence an endorsement on the back of the certified copy of the land certificate upon which the patent was issued, which was as follows:  "Adjoining his location on league number 58, on Caney. Received January 15, 1839.  James H. Selkirk, county surveyor."  [Can-

celled by two lines drawn diagonally through it; one from each upper corner.] This was excluded by the court, and this action is assigned as error.

It will be seen by a scrutiny of the testimony that it became necessary for plaintiffs to identify their ancestor as being the man to whom the bounty warrant was issued, and this testimony might have been a circumstance going to show that the certificate upon which the patent was issued was the same that was placed in the hands of Selkirk in Matagorda County in 1839, and by him returned to plaintiff's ancestor, his (the surveyor's) notes being cancelled when he gave the paper back.

But was this cancelled endorsement by the county surveyor such a paper as would render a certified copy of it from the Land Office valid evidence? Article 2253 makes a copy of any paper in public offices evidence, the original of which would be valid and legal evidence; its object simply being to place within the reach of litigants the evidence of the original papers in the Land Office through certified copies. It was in proof that the certificate for 320 acres of land was placed in the hands of James H. Selkirk, county surveyor of Matagorda County, in 1839, and we find from the copy of the certificate that it was approved on April 24, 1849, and a patent issued on it in June following. The endorsement on the certificate must have been made before it was filed in the Land Office in 1849, more than forty years before the attempt to use it as evidence. Before the bounty warrant was filed in the Land Office there could have been no motive for or inducement to have forged the endorsement on the certificate, and it can not be presumed that it was written thereon since it was filed with the Land Commissioner. It has all the essentials and qualifications to make it an ancient instrument. It comes from the proper custody, is free from suspicion, and is over thirty years of age, and was therefore admissible at common law as an ancient instrument. Ammons v. Dwyer, 78 Texas, 650; Crain v. Huntington, 81 Texas, 614.

In the case of Stroud v. Springfield, 28 Texas, 664, it was held, that in addition to the other essentials above enumerated, there must have been some act of ownership corroborative of the genuineness of the instrument before it could be considered an ancient instrument. The case of Holmes v. Coryell, 58 Texas, 688, is perhaps a little more liberal in its views on this question, and yet there is drawn from the opinion the thought that all proof is not dispensed with; and the case of Pasture Company v. Preston & Smith rather follows in its wake. But in the cases of Parker v. Chancellor, 73 Texas, 478; Ammons v. Dwyer, 78 Texas, 639; and Crain v. Huntington, 81 Texas, 614, the broad and liberal doctrine is laid down, that where a deed is thirty years old, and is free from suspicion, and comes from the proper custody, it would be admissible in evidence as an ancient instrument.

There was no objection made to the admission of the certificate, as there could not have been; and while the endorsement is no part of it, it has evidently been on the certificate for over fifty years. Every circumstance went to show its age and genuineness, and no attempt was made to impeach it.

But it is objected that it is a mere memorandum and no part of the certificate. Suppose that the endorsement or memorandum of Selkirk had been found among the papers of John Wilkinson, disconnected from the warrant, and had been preserved by his children, is there any question that it could have been introduced without the necessity of proof of execution? None whatever. In the case of Ballard v. Carmichael, 83 Texas, 359, a receipt for money was permitted to be read as an ancient instrument; and the authorities seem to hold generally that any document or paper that is proper testimony otherwise, would, if it has the necessary essentials, be admitted as an ancient instrument. It has been held that a letter purporting to have been written more than thirty years ago is an ancient document, and being produced from the family papers of the person to whom it was addressed, the writer and person to whom it was addressed being dead, it is presumed to have been written by the person by whom it purports to have been written; also a pay roll of a company, in the war of 1812, on which is what purports to be the signature of a soldier to a receipt for pay due him, produced from the archives of the government. The admission of documents as ancient ones applies not only to deeds, wills, and bonds, but also to receipts, letters, entries, and all other ancient writings. 2 Phil. on Ev., 481; Bell v. Brewster, 10 N. E. Rep., 679.

In the case we have before us the plaintiff was, without the order of the district judge for the original to be brought from the Land Office, compelled to use the copy of the endorsement, and this, under the circumstances, was sufficient. Brown v. Simpson, 67 Texas, 225.

But it may be said that the erasure throws suspicion upon the memorandum or endorsement. This, instead of being a suspicious circumstance, might be considered confirmatory of its genuineness, for it might be supposed to be natural that Selkirk, when he returned the certificate or warrant to Wilkinson, should have attempted to erase the notes he had placed on it. But if this is a suspicious circumstance, it is to be passed on by the jury; for it is held by our Supreme Court, that when an ancient document is attacked, and there is a conflict of evidence about any of its essentials, it is proper for the court, under proper instructions, to submit the issue to the jury. Pasture Company v. Preston & Smith, 65 Texas, 448; Warren v. Frederichs, 76 Texas, 652; Ammons v. Dwyer, 78 Texas, 639. The case of Gaither v. Hanrick, 69 Texas, 92, cited by appellee, is not in point in this case. In that case an instrument was attacked as a

forgery, and it was held that a copy of a memorandum made by some unknown person on the document was hearsay, and was not admissible as testimony to show the genuineness of the document.

Defendant in this case claims the land sued for by virtue of a sheriff's deed made to his ancestor in 1853, under and by virtue of an execution issued out of a Justice Court of Bexar County. The deed is amply sufficient in its recitals. But the question that arises and upon which the decision on this point must turn is, was the judgment and execution properly proved up? The very life and vitality of a sheriff's deed is a valid judgment and valid execution.

Some few authorities have held that no action can be maintained upon a record that is lost or destroyed; that the existence and tenor of the judgment can be proved in no other way than by an inspection of the record itself. But the great preponderance of authority favors the rule, that in such a case secondary evidence is admissible to establish the fact of the existence of such a judgment and its contents. 2 Black on Judg., sec. 969.

Defendant, upon a proper showing of the loss or destruction of the judgment, would have the right to establish the fact of the rendition of the judgment and the execution by secondary proof. It became necessary to clearly establish the loss of the docket and papers of the justice of the peace before secondary evidence would become admissible, and we are of the opinion that there has been a failure to do this in this case. We have been shown by the testimony that vigilant and active search was made in the clerk's office for the papers and docket, and that the latter was found, and when discovered we are not informed what its contents were, further than that the case in which the judgment is claimed to have been rendered was entered in its proper place. When plaintiffs inquired as to a judgment being recorded in this docket, defendant excepted, and the court excluded the answer; and again, when plaintiffs offered in evidence a copy of the proceedings in the case taken from this old Justice Court docket, and certified to by the county clerk of Bexar County, this, too, upon objection of defendant, was excluded. The justice of the peace, who was a witness for defendant, does not deny that the docket was the one he used, and does not swear that he ever entered any judgment in the docket, and does not deny that the docket marked with his name and containing the entry of the case was the only docket he had. This docket entry was positive proof that no judgment was ever entered, and was calculated to remove every presumption in favor of the validity of the sheriff's deed. If no record whatever had been found, then the proof introduced might have been sufficient. But the docket is discovered, and the reason for using secondary evidence would be removed. We find many cases sustaining very brief and meager judg-

ments by justices of the peace, but there is in every one of them some words or sentences indicating the intention to render a judgment.   Clay v. Clay, 7 Texas, 251; Howerton v. Luckie, 18 Texas, 237.

In this case a justice of the peace, thirty-six years after the occurrence, is permitted not only to prove up a judgment and execution, but to supplement and amend, if not to contradict, his records made at the time and now in existence.

Article 1182, Paschal's Digest, Act of 1848, provides, that every justice of the peace shall keep a docket, in which, among other things, must be entered the judgment rendered by the justice, and time of rendering the same, the time of issuing execution, the name of the officer to whom it was directed, and the return of the execution; and while the entry of the judgment would not be necessary to its validity, being merely a ministerial act, and the omission to enter it does not destroy it, yet the record entry of the judgment is indispensable to furnish the evidence of it, when it is made the basis of a claim or defense in another court.  1 Black on Judg., sec. 106.   The docket of the justice of the peace was discovered; there was no entry of the judgment; and if there was or was not a judgment entered on the docket, the same being in existence, the best proof of that fact would be the docket itself.

It is unnecessary to notice other errors assigned.

For the errors indicated, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 1, 1893.

Rehearing refused.