For this error alone the judgment in this case is reversed, and the cause remanded.

---

BARRON v. SAN ANGELO NAT. BANK.

(Court of Civil Appeals of Texas. Austin. April 19, 1911. Rehearing Denied May 31, 1911.)

1. EVIDENCE (§ 16*) — JUDICIAL NOTICE — MEANING OF WORDS—"YEARLINGS."

The court takes judicial notice of the ordinary meaning which words have attached to them by general usage, and that, in the vernacular of this state, "yearlings" means animals of the cattle species.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 20; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 8, p. 7554.]

2. CHATTEL MORTGAGES (§ 118*) — DESCRIPTION OF PROPERTY—ANIMALS.

Chattel mortgage of 100 cows and 300 head of "yearlings," with the reference in the mortgage itself to said cows and yearlings as "the cattle above described," is a sufficiently certain description of the yearlings as cattle, as distinguished from horses or sheep.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 203, 204; Dec. Dig. § 118.*]

3. CHATTEL MORTGAGES (§ 177*) — CONVERSION OF MORTGAGED PROPERTY—ACTION—PLEADING—VARIANCE—"COMING TWOS."

A petition in an action for the conversion in October, 1907, of animals, describing them as "coming twos" and as part of property mortgaged to plaintiff in November, 1906, is supported by the mortgage which describes them as "yearlings," since, if they were yearlings when mortgaged, they would be "coming twos" the following October at the time of the alleged conversion.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 177.*]

4. CHATTEL MORTGAGES (§ 150*)—LIEN TO PRIORITY—CONSTRUCTION—NOTICE.

Where a mortgage is made of 300 yearlings to be acquired by the mortgagor, and to be branded for identification as provided by the mortgage, and is recorded, the record is constructive notice of the mortgagee's lien as against the party who converts a part of them after all the things necessary for their identification had been done.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–252; Dec. Dig. § 150.*]

5. CHATTEL MORTGAGES (§ 124*)—CONSTRUCTION—AFTER-ACQUIRED PROPERTY—SUBSEQUENT ACTS.

Where animals not owned then by the mortgagor are mortgaged, and the mortgagor afterwards acquires animals of the kind described by the mortgage, and put them in pasture, and branded them as provided by the mortgage, these acts of the mortgagor sufficiently show a purpose to bring the after-acquired property within the terms of the mortgage, and render the mortgage valid.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 208, 209; Dec. Dig. § 124.*]

6. MORTGAGES (§ 137*) — NATURE OF MORTGAGE IN GENERAL—COMMON LAW.

At common law, a mortage conveyed the legal title and the right of possession, and nothing was left to the mortgagor except the right of redemption.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 270–276; Dec. Dig. § 137.*]

7. CHATTEL MORTGAGES (§ 11*) — PROPERTY SUBJECT TO MORTGAGE — AFTER-ACQUIRED PROPERTY—"POTENTIAL EXISTENCE."

By the doctrine of "potential existence," which means a present interest in property of which the thing mortgaged is the natural product or growth, as wool to be upon sheep, or crops upon land owned by the mortgagor when the mortgage is made, a mortgage of property not in existence, or which the mortgagor does not then own, may be upheld at common law.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 47; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 6, p. 5475; vol. 8, p. 7758.]

8. CHATTEL MORTGAGES (§ 11*) — PROPERTY SUBJECT TO MORTGAGE — AFTER-ACQUIRED PROPERTY—INTERVENING ACT.

Under the doctrine of "intervening act," the grant of a future interest with a declara-

tion precedent may take effect by some new intervening act, as a delivery of possession to the mortgagee or his taking possession after acquisition of the mortgage, and such act relates back to the original grants and operates as a conveyance of the legal title.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 47; Dec. Dig. § 11.*]

9. CHATTEL MORTGAGES (§ 129*) — NATURE — "MORTGAGE"—EQUITY—SECURITY.

In equity, a mortgage is not a conveyance of the legal title, but only a security for debt.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 216; Dec. Dig. § 129.*

For other definitions, see Words and Phrases, vol. 5, pp. 4596–4606; vol. 8, p. 7725.]

10. CHATTEL MORTGAGES (§ 18*) — PROPERTY SUBJECT TO MORTGAGE — AFTER-ACQUIRED PROPERTY.

In equity, it is immaterial that the mortgagor does not own the property at the time the mortgage is executed, since the mortgage will be treated as a continuing agreement, and upon his acquisition of such property its lien will attach.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 61–66; Dec. Dig. § 18.*]

11. CHATTEL MORTGAGES (§ 177*)—CONVERSION—ACTION FOR DAMAGES.

The mortgagee of personal property is entitled to recover, against one who converts the same to his own use and prevents foreclosure, the value of the property converted, to the extent of his lien.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336–357; Dec. Dig. § 177.*]

12. CHATTEL MORTGAGES (§ 177*) — CONVERSION—ACTION FOR DAMAGES—MARSHALING ASSETS.

The mortgagee of personal property is not required to exhaust its remaining security before it is entitled to judgment against a trespasser for the conversion of a part of the mortgaged property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336–357; Dec. Dig. § 177.*]

13. CHATTEL MORTGAGES (§ 177*) — ACTIONS FOR DAMAGES—DAMAGES—INTEREST.

Where the complaint in an action for damages for the conversion of mortgaged personal property does not ask for interest eo nomine, but alleges damages from such conversion, interest, though not recoverable as such for conversion of property, may be awarded from the date of the conversion as damages.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336–357; Dec. Dig. § 177.*]

14. CHATTEL MORTGAGES (§ 177*) — ACTION FOR DAMAGES—TRIAL—QUESTION FOR JURY.

In an action for the conversion of mortgaged personal property, the question as to the recovery of interest as an element of damages, is one of law for the court.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 177.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Action by the San Angelo National Bank against W. C. Barron and another. Judgment for plaintiff, and defendant Barron appeals. Affirmed.

Hill, Lee & Hill, for appellant. Wright, Wynn & Bartholomew, for appellee.

JENKINS, J. Appellee brought suit against J. I. Nettleton on a note for $3,467.75 and against appellant for the conversion of 96 head of cattle of the value of $15 per head, alleged to have been mortgaged by said Nettleton to secure the payment of said note. Nettleton did not file any answer. Appellant, Barron, answered by general and special demurrers and general denial. The court instructed the jury to return a verdict against Nettleton for the amount of the note, principal and interest, and against appellant for the value of 96 head of cattle at $15 per head, with 6 per cent. interest from October 16, 1907, the date of the alleged conversion, which being done, judgment was entered accordingly. The defendant Barron appealed from said judgment, and by proper assignments presents for consideration the several propositions of law hereinafter discussed.

Findings of Fact.

The evidence shows that J. I. Nettleton on November 26, 1906, borrowed from appellee, the San Angelo National Bank, $3,467.75, for which he executed his note, payable in 180 days. This money was borrowed for the purpose of buying cattle, and was deposited in said bank and was used for that purpose. At the same time the said note was executed Nettleton executed and delivered to R. A. Hall, as trustee for said bank, a chattel mortgage on property described as follows: "100 grown cows (black mulies) branded ╋ on left shoulder or hip. Also 300 head of yearlings, which I agree to purchase with the proceeds of this loan, branded ⚘ on the right shoulder or hip. Said above enumeration being intended to and does and shall include all the cattle of said kind, character and description owned by said grantor as aforesaid, and all additions and accretions thereto, and the natural increase thereof are specially included in and covered hereby. The cattle above described may have other brands or marks on them than those mentioned above, but those given are the holding brands or marks, and carry the title to the cattle now located in what is known as the Tom Woods pasture in Sterling county, Texas, about fifteen miles north of Sterling City."

At the time this mortgage was given Nettleton owned the 100 head of cows mentioned, and they were located in said pasture. He did not have in mind any particular yearlings that he intended to purchase. Soon thereafter he bought from several parties in an adjoining county 300 head of yearling steers and put them in said Woods pasture, and branded them as indicated in said mortgage On October 16, 1907, the appellant took possession of 96 head of these yearlings, at that time two years old, and converted them to his own use. They were

at that time of the value of $15 per head. Said mortgage was recorded in Tom Green county, where said Nettleton resided, in a few days after its execution.

### Conclusions of Law.

Appellee's petition alleged the facts substantially as above set out. Appellant insists:

[1, 2] (1) That the description "300 head of yearlings" is vague and uncertain, and does not show whether they were cattle, horses, or sheep. We take judicial notice of the ordinary meaning which words have attached to them by general usage. In the vernacular of this state "yearlings" means animals of the cattle species, just as "cow" does. This, however, is made plain by the mortgage itself, wherein it refers to said cows and yearlings as "the cattle above described."

[3] Appellant also insists that the description of the animals alleged to have been converted by him does not correspond with the description of the animals described in the mortgage, in that it is alleged that the animals so converted were "coming twos." The petition alleges that appellant forcibly took possession of "a part of the property herein and in said mortgage described," giving the number and the brand, to wit, ⚐, and further describes them as "coming twos" at the time of said conversion. There is no contradiction in this. If they were yearlings when mortgaged, they would be "coming twos" the following October, the time of the alleged conversion.

[4] (2) That the description of the 300 yearlings is not sufficient to constitute record or constructive notice.

We do not think that this contention is sound. The mortgage itself, without the aid of oral testimony, clearly pointed out how the yearlings, when acquired, were to be identified. The things to be done necessary for their identification, as indicated in said mortgage, were done before appellant converted them. Nothing was subsequently done that tended to render their identification uncertain. They were not mixed or mingled with other animals of like description. Appellee did not acquire and did not own any yearlings but these. The issue of innocent purchaser is not in this case.

[5] (3) Appellant submits the following proposition: "A chattel mortgage upon property not owned by the mortgagor at the date of the mortgage is void, unless some act is done subsequent to the acquisition of title thereto showing a purpose to bring the property within the terms of the mortgage."

Even if it be conceded that the law is as above stated, it would afford no reason for setting aside the judgment in this case, for the reason that "some act was done (by the mortgagee) subsequent to the acquisition of title (to said yearlings) showing a purpose to bring the (said) property within the terms of the mortgage." These acts were: He purchased of the kind of property in said mortage agreed to be purchased; he put them in the place indicated in said mortgage where they might be found; and he branded them as said mortgage indicated they should be branded.

[6] Unless the distinction between the common law and equity doctrines as to mortgages be kept in mind, some confusion is liable to arise from reading the authorities on this subject. At common law a mortgage conveyed the legal title and the right of possession, and nothing was left to the mortgagee except the right of redemption. As one cannot convey the legal title to property which has no existence or which he does not own, it followed that one could not at common law mortgage property which was not in existence, or which he did not own. This doctrine was perhaps well enough for our English ancestors in the early days of that nation, but as trade grew apace it was found to hamper commercial transactions, and the courts, ever equal to the emergency, began to find means to relax its rigor. This was acomplished by inventing the doctrine of "potential existence" (Ludlum v. Rothschild, 41 Minn. 218, 43 N. W. 137) and of "intervening act" (Brown's Leg. Max. 497).

[7] By potential existence is meant a present interest in property of which the thing mortgaged is the natural product or growth, as wool to be upon sheep or crops upon land owned by the mortgagor at the time the mortgage is executed. The courts have not agreed as to the application of the doctrine of potential existence. For instance as to crops, some held that the crops must be actually growing at the time of the mortgage, others that it is sufficient if the seed be germinated, others that the seed need only be in the ground, and others that the seed need not even be planted, if the ground upon which the crop is to be planted be sufficiently described.

[8] As to "intervening acts," Lord Bacon laid down the maxim, "Although the grant of a future interest is invalid, yet a declaration precedent may be made which will take effect on the intervention of some new act." This is illustrated by possession being delivered to the mortgagee, or his taking possession after acquisition by the mortgagor. Such act is held to relate back to the original grant, and operates as a conveyance of the legal title.

[9, 10] Equity, however, does not incumber itself with these technicalities, but holds that a mortgage is not a conveyance of the legal title, but only a security for debt. This was first held in Mitchell v. Winslow, 2 Story, 635, Fed. Cas. No. 9,673, and has become the settled American doctrine. It was subsequently held by the House of Lords in Holroyd v. Marshal, 10 H. L. C. 191. The case of Mitchell v. Winslow, supra, has been expressly approved by the Supreme Court

of this state in Richardson v. Washington, 88 Tex. 344, 31 S. W. 617, from which we make the following excerpt: "It makes no difference whether at the rate of the agreement the party agreeing had it in his power to perform the agreement, provided that at the date of the decree it appears to the chancellor that he has such power." It makes no difference that the mortgagee did not own the property at the time the mortgage was executed, the mortgage will be treated as a continuing agreement, and upon his subsequently acquiring such property the lien will attach.

(4) Appellant insists that as appellee had not foreclosed its mortgage and was not seeking to do so in this suit, it was not entitled to judgment for the value of such of the mortgaged animals as were converted by appellant.

[11] Appellant by his wrongful action prevented a foreclosure as to the 96 head of yearlings. It is well settled in this state that a mortgagee of personal property is entitled to recover against one who converts the same to his own use, the value of the property so converted, to the extent of his lien. Scaling v. Bank, 39 Tex. Civ. App. 154, 87 S. W. 717; Scott v. Cox, 30 Tex. Civ. App. 190, 70 S. W. 804.

[12] (5) Appellee was not required to exhaust its remaining securities before it was entitled to judgment against appellant. Appellant did not ask that the securities be marshaled, and, being a trespasser, he had no right to make such demand. Scaling v. Bank, supra; Wilkes v. Adler, 68 Tex. 692, 5 S. W. 497; Silberberg v. Trilling, 82 Tex. 523, 18 S. W. 591.

[13] (6) The court did not err in instructing the jury to find 6 per cent. interest on the value of the animals converted by appellant, from the date of such conversion. It is true, as stated by appellant, that appellee did not pray for interest eo nomine, but it is also true that interest as such, is not, technically speaking, recoverable for the conversion of property, but interest in such case is recoverable as damages. Appellant alleged its damages by such conversion to be $3,000, its judgment was for a less sum, to wit, $1,440, with 6 per cent. interest from October 16, 1907. It has been held that in actions of trespass to try title rents were recoverable as damages, though rents as such be not demanded in the petition. Ammons v. Dwyer, 78 Tex. 652, 15 S. W. 1049. We see no reason why the same rule should not apply to interest.

[14] Appellant contends that whether interest be recoverable in this case was a matter for the jury, and not for the court. Sanger v. Thomasson, 44 S. W. 408, would seem at first blush to support this view, but a closer examination of that case will disclose the fact that only $333.96 was asked for, and that the court instructed the jury to return a verdict for this amount with interest, which gave the plaintiff greater damages than he alleged. This case cites Close v. Fields, 13 Tex. 623, and Heidenheimer v. Ellis, 67 Tex. 426, 3 S. W. 666. In Close v. Fields, it was said that the court should not have instructed the jury to return a verdict for interest, but it was held not to be reversible error so to do, for the reason that the evidence would not have authorized any other verdict. That would be a sufficient answer to appellant's contention in this case as to the instruction of the court to allow interest. We quote from Heidenheimer v. Ellis, supra, as follows: "It is sometimes said that, where interest is allowable by way of damages, the allowance is in the discretion of the jury. * * * Such, however, is not the rule applicable to cases of this character." In the well-considered case of Railway v. Jackson, 62 Tex. 209, Mr. Justice Stayton reviews at length the authorities on this question, and concludes that, "in cases like this the true measure of damages will include interest *as a matter of law*" citing many cases. (Italics ours.)

This matter has been set at rest in Texas by the opinion of our Supreme Court in Watkins v. Junker, 90 Tex. 588, 40 S. W. 12, in which Mr. Justice (now Chief Justice) Brown says: "If interest be properly an element of damages in any case, then it is so as matter of law. Whether the case is such that the law makes it applicable is a question of fact for the jury, but whether or not it is to be allowed, if the facts exist, is a question of law that should not be left to the jury."

Finding no error in the record, the judgment of the trial court herein is affirmed.

Affirmed.