## M. E. GIST ET AL. v. E. H. EAST ET AL.

### Delivered May 8, 1897.

**1.  Land Certificate—Location and Conveyance—Effect of Relocation.**

A conveyance of an interest in a land certificate described with reference to an existing location entitles the grantee to a corresponding interest in land thereafter patented on a relocation of such certificate.

**2.  Adverse Possession—Tenants in Common—Notice of Repudiation.**

The possession of land by one tenant in common can not be adverse as to his cotenants until notice is brought home to the latter of the repudiation of their rights as cotenants.

**3.  Registration—Conveyance of Land Certificate—Relocation.**

The due registration in one county of a conveyance of an interest in a land certificate originally located in another county, but subsequently relocated in the former county, is constructive notice of the rights of the grantee in the land on which the relocation is made.

**4. Land Certificate—Relocation—Effect on Wife's Interest.**

The interest of a widow in land on which a certificate issued to her husband is relocated is only such as she would have been entitled to under the original location.

Appeal from Archer. Tried below before L. C. Barrett, Esq., Special Judge.

*W. E. Forgy* and *Carrigan & Montgomery,* for appellants.

*F. E. Dycus,* for appellees.

The Reporter has been unable to obtain copies of the briefs.

STEPHENS, Associate Justice.—The land in controversy is the west half of a survey of 640 acres, situated in Archer County, Texas, and patented to M. M. Miller, as assignee of George W. Barnett, January 10, 1868, by virtue of the George W. Barnett Central National Road certificate No. 2, issued January 6, 1845, for 640 acres of land, under an Act approved February 5, 1844, entitled, "An Act to Open and Establish the Central National Road."

This certificate was duly assigned and transferred by George W. Barnett, October 25, 1855, to M. M. Miller, who attempted on April 22, 1857, to locate it in two separate places in Ellis County, 177 acres in one place and 463 acres in another; the survey of the 177 acres location being made on the 22d day of June, 1859, and the other on the 23d day of August, 1859, by virtue of a reapplication for a survey made January 16, 1859.

So much of the certificate, or at least 170 acres thereof, as was thus attempted to be appropriated by the survey made in June was on the 1st day of February, 1859, transferred by Miller to John F. Thomas, by the following writing:

*"The State of Texas, Dallas County.*— Be it known that I, M. M. Miller, of the State of Texas and county of Dallas, for and in consideration of $1 per acre, have this day bargained and sold, and do hereby convey unto John F. Thomas, of the State aforesaid and county of Ellis, so much of certificate No. 2, issued to George W. Barnett on the 6th day of January, 1845, by George W. Still, Sup. C. N. Road, and approved the same date by the commissioners of said road, for 640 acres, as may cover a tract of vacant or unsurveyed land, situated in the north part of Ellis County, bounded on the north by the A. M. Lavender 640 acres survey, on the east by James Conway survey, on the south by a small survey for W. H. Morris, and on the west by a survey for M. B. Runnells, supposed to be about 170 acres. To have and to hold unto him the said John F. Thomas, his heirs and assigns, forever, the title to so much of said certificate, and also to the above described land when patented by virtue of said certificate. I do hereby guarantee unto him, the said Thomas, that said certificate is valid and genuine, and that my right to convey it to him is in every way unincumbered, and hereby authorize the Commissioner

of the General Land Office to issue a patent to him for the above described land, when survey and application is made in due course of law. I do hereby acknowledge the receipt of $170 from said John F. Thomas. Should the said quantity of land contained in the above recited boundaries be less than 170 acres, I hereby promise to pay back to said Thomas for the deficiency at the rate of $1 per acre; he, the said Thomas, binding himself to pay to me the rates of $1 per acre for the excess that may be above $170 acres.

"This the 1st day of February, 1859.

"M. M. Miller (L. S.)

"Witnesses:

"W. Chambers,
"Geo. W. White."

Construing the law under which the certificate was obtained as prohibiting its location in different places and upon a less quantity of land than 640 acres, the land department held the surveys made in Ellis County to be illegal, and in consequence thereof in 1867 these locations were abandoned and the certificate relocated in Archer County, upon which the patent issued. All parties claim under this relocation.

M. M. Miller died in March, 1860, leaving as his relict Emma A. Miller, to whom he had been married July 4, 1858, and who afterwards, in August, 1860, was married to W. B. Miller.

February 4, 1895, this suit was brought by E. A. and W. B. Miller against E. H. East, F. E. Dycus, and others. When John F. Thomas acquired title to the 170 acres of the certificate he was a married man, and his wife died in 1863, and he in 1866, leaving surviving them several children, M. E. Gist and others, who brought suit to recover the land, October 28, 1895, against E. H. East, F. E. Dycus, and others. These two suits were consolidated, and upon a trial before the court without a jury judgment was entered in favor of Emma A. Miller, joined by her husband, for one-sixth of the land in controversy, and in favor of the defendants in the two suits for the rest, denying the heirs of Thomas any recovery. From this judgment said heirs have appealed, and from so much of the judgment as awarded a one-sixth interest in the land to Emma A. Miller and husband, East, Dycus, and others appeal.

When M. M. Miller acquired the certificate from Barnett (October, 1855) Mary E. Miller was his wife, but she died in 1856 or 1857, leaving two children by M. M. Miller, who already had a daughter by a former wife; and whatever title these three inherited was conveyed on January 31, 1891, to F. E. Dycus, who in the same year conveyed one-half of the land so acquired to M. M. Miller, Jr., one of his grantors, who also reconveyed to Dycus one-sixth of the land in March, 1891. Dycus conveyed to East 106⅔ acres in February, 1891.

The transfer quoted above from Miller to Thomas was duly filed for record in Archer County, February 21, 1883, and recorded March 5, 1883. East and others (not parties to this suit) took some sort of pos-

session of the land in controversy as far back as 1883, under a title which was afterwards adjudged in East v. Dugan, 79 Texas, 329, to be void. The only title, except by limitation, ever acquired, however, by any of the defendants in the two actions had its inception in the conveyance of January 11, 1891, which was duly recorded, followed by possession and payment of taxes, but no notice—unless what is stated in these conclusions would amount to notice—seems ever to have been brought home to the heirs of Thomas of any repudiation of their right as tenants in common. Besides, less than five years intervened between the date of said conveyance and the bringing of the suits.

During the period of this occupancy Emma A. Miller was a married woman, and her coverture was pleaded and proven in avoidance of the defense of limitation. She claimed that her first husband, M. M. Miller, had given her the certificate in controversy during their marriage, but this contention was overruled by the judgment, and there is no cross-assignment of error on her part. Besides, as to this claim the defendants in the suits were protected as innocent purchasers.

The following was the evidence of adverse possession and innocent purchase on the part of East and others: "It was shown by the testimony of E. H. East that E. H. East and R. R. Milton fenced the land sued for in 1883, and that they built a house on it. They held possession of the land till R. R. Milton died, which was in 1884, and East and the Milton heirs held it till the Milton heirs sold out to E. B. Harrold. Before they sold the suit was instituted by E. H. East and the Milton heirs against G. W. Dugan. The suit was lost by plaintiffs, and then East bought of F. E. Dycus a one-third interest in the land. All taxes were paid by E. H. East on his part of the land from 1883 up to the time he sold to John Baxter in 1895. East further testified that he and Milton and the Milton heirs and F. E. Dycus and M. M. Miller had held said land from 1883 to 1895, by connecting possessions. Dycus and Miller have only had possession of this land since February 1, 1891. Neither Emma A. Miller, William B. Miller, nor the Thomas heirs had ever been in possession of said land. Testifying further, E. H. East said that when he and Milton bought from W. N. Coombes, in 1883, they paid $640 cash for the land. He had then never heard of the Thomas heirs, nor of Emma A. Miller; nor had he ever seen or heard of the deed from M. M. Miller to J. F. Thomas or of its record. After Dugan gained the land from the Milton heirs and E. H. East, in 1891, witness bought from F. E. Dycus an undivided one-third interest in the land sued for, being the same land conveyed by witness to John Baxter. Witness paid $200 cash for this interest and believed that he was getting a good title, and all the title held by the heirs of Madison M. Miller, deceased. He had never heard of Emma A. Miller or William B. Miller; knew nothing about the Miller heirs having a stepmother; nor had he ever heard of the plaintiffs the Thomas heirs till about the time the suit was brought, and had never seen or heard of any conveyance from M. M. Miller to John F. Thomas,

under which the Thomas heirs claimed. Witness sold the land to defendant John Baxter, in July, 1895, at $10 per acre. Baxter had no notice from witness of any outstanding title. Cross-examined, the witness East said that the house which he and Milton built on the land sued for remained on it five or six years, and they kept a family living in the house all the while. Finally the house was moved, but the land remained in the pasture of witness till about a year or so ago. On redirect examination, he said all taxes on the land had been paid by F. E. Dycus, M. M. Miller, and E. H. East for the years 1891, 1892, 1893, 1894, and 1895, and from 1883 up to 1890, inclusive, all taxes thereon were paid by witness and his partners, Harrold and Milton, and the Milton heirs."

The Thomas heirs, six in all, in avoidance of the defense of limitation, pleaded coverture, and proved it as to four of them, but not as to the other two.

*Conclusions of Law.*—In so far as the judgment appealed from denied the heirs of John F. Thomas any recovery, we are of opinion that it was erroneous. The conveyance from Miller to Thomas, quoted in our conclusions of fact, had the effect of conveying the legal title to that much of the certificate and to a corresponding interest in the land finally located and patented by virtue thereof. Barroum v. Culmell (Sup. Ct.), 37 S. W. Rep., 313; Baldwin v. Root, 38 S. W. Rep., 630; Parker v. Walker, 39 S. W. Rep., 611.

These heirs were not barred of their rights by limitation. Four of them were continuously under coverture. The other two were not barred for the following reasons: The possession of East, with others, of the entire tract began in 1883 under a void title, and in 1891, before the ten years had lapsed. he acquired title to one-third of the whole, or 106⅔ acres of that in controversy, and afterwards did not claim or possess any more than that. He never held five years of consecutive adverse possession prior to the bringing of this suit of any particular portion of this land, under a deed or deeds duly recorded, so far as we can discern from the evidence. But if he did, he seems to have abandoned all except the part conveyed to him by Dycus in 1891, which was less than five years before the bringing of these suits, and which was all he claimed on the trial. Besides, as the Thomas heirs were tenants in common with East, Dycus, and others after the Miller heirs conveyed to Dycus in 1891, they were entitled to have notice brought home to them of the repudiation of their rights as such tenants in common. 27 Texas, 317; 63 Texas, 210; 7 Texas Civ. App., 602. At all events, East only could assert limitation, and as the Thomas heirs may have their interests without interfering with his, the question need not be further discussed. He gets all he claims.

The defense of innocent purchaser was equally unavailing. The due registration in Archer County of the conveyance from Miller to Thomas, before the heirs of Miller had conveyed any title to the defendants below, was constructive notice to them, and the descent cast by the death of

Thomas upon the appellants Gist and others invested them with the legal title.

In so far as the judgment awarded Emma A. Miller a one-sixth interest in the land, we think it was erroneous in not limiting that recovery to a life estate in one-sixth of what remained of the land in controversy after deducting the 85 acres to which the appellants Gist and others as heirs of Thomas were entitled. When Miller died the certificate was tied to the land in Ellis County, and according to the law of descent and distribution, had it so remained, her interest would have been a life estate in one-third of his half of the land, the other half descending to his children; and we are of opinion, though this question is not free from difficulty, that she should only take such interest in the land in Archer County as she would have been entitled to had the location remained as it was in Ellis County. As having some possible bearing upon this question, see the case of Summerhill v. Hanner, 72 Texas, 224. See also Parker v. Walker, supra.

We conclude, therefore, that the judgment should be reversed and here rendered in favor of the Thomas heirs, the appellants M. E. Gist and others, for an undivided interest of 85 acres in the land in controversy, and that appellee Emma A. Miller, with her husband W. B. Miller, should recover a life estate of one-sixth in the remainder, and that appellee East recover his 106⅔ acres, and the other appellees recover the fee simple title to the remainder, subject to the life estate of Emma A. Miller in one-sixth part thereof.

*Reversed and rendered.*

### FURTHER CONCLUSIONS.

#### June 12, 1897.

Upon re-examination of the record, we find that Susan Thomas, daughter of John F. Thomas, deceased, died without issue in 1875, leaving a surviving husband who is still living, but who did not join in this suit. He acquired by descent from her one-half of her seventh interest in the land, and we see no reason why F. E. Dycus and others did not acquire this interest under their plea of five years' limitation, their adverse possession under conveyance from the Miller heirs having begun and continued for more than five years next before the trial, and the other requisites of the statute having been complied with.

The second wife of John F. Thomas died without issue in 1867, and hence whatever interest she may have acquired was only a life estate, and perished with her.

The judgment heretofore entered in this court will therefore be so reformed as to limit the recovery of the Thomas heirs to 78 13-14 acres, instead of 85 acres; and the motion for rehearing in other respects will be overruled.

The request for additional findings, beyond those stated above, will also be denied, as the further findings are not deemed material; but if so,

there is no conflict in the evidence on the points covered by the request, and the statement of facts is quite brief, containing a succinct statement of the facts rather than of the evidence.

*Judgment modified.*

Writ of error granted.  See Miller v. Gist, 91 Texas, 335.