MARTINEZ v. BRUNI et al.    (No. 6257.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 5, 1919. Rehearing Denied Dec. 10, 1919.)

1. EVIDENCE ⊜═187—PREDICATE TO ESTABLISH EXISTENCE AND LOSS OF DEED.

The question whether sufficient predicate for the introduction of testimony to establish the existence and loss of a deed has been established is a question of law addressed to the sound discretion of the court.

2. EVIDENCE ⊜═182—SUFFICIENCY OF PREDICATE TO ESTABLISH EXISTENCE OF LOST DEED.

In an action of trespass to try title, testimony that the witness saw a deed to his father held sufficient predicate to warrant evidence of contents of the lost deed, particularly as the whole subject was finally submitted to the jury.

3. EVIDENCE ⊜═182—EXCLUSION OF TESTIMONY TO REBUT PRELIMINARY SHOWING AS TO EXISTENCE OF LOST DEED.

Where sufficient predicate to allow testimony as to existence and loss of deed was laid in absence of jury, the refusal of the court to allow a rebutting witness to testify was not an abuse of discretion, as such witness would again have to be heard by the jury.

4. TRIAL ⊜═249—OBJECTION TO ABSTRACT INSTRUCTION.

A general charge purporting to instruct particularly on question of abstract law cannot be challenged on the ground that the evidence as to the issue, which was one relating to the existence of an alleged lost deed, was insufficient to take the matter to the jury.

5. EVIDENCE ⊜═183(15) — SUFFICIENCY OF SHOWING OF LOSS OF DEED TO GO TO JURY.

Testimony that one under whom plaintiff claimed executed a deed to defendant's father, that the deed with a box of jewelry was stolen, that the robbers were pursued to the borders of a foreign country, and that nothing was recovered, is a sufficient showing of loss and inability to produce the instrument.

6. DEPOSITIONS ⊜═99 — ADMISSIBILITY OF DEPOSITION TAKEN IN DIFFERENT ACTION.

A deposition taken by plaintiff in a different action which was not filed among the papers in the suit until the day on which the case was called for trial cannot be read in evidence; no notice that it would be offered having been given.

7. EVIDENCE ⊜═372(3) — ADMISSIBILITY IN TRESPASS TO TRY TITLE OF OLD TAX RECEIPTS.

In trespass to try title, where defendants claimed under an alleged lost deed, tax receipts issued 30 years before trial by the proper officer, which identified the persons paying the same by name and described the land, held properly admitted as against objection that there was no proof of execution or identity.

8. EVIDENCE ⊜═372(3)—ANCIENT TAX RECEIPTS ADMISSIBLE AS ANCIENT DOCUMENTS.

Receipts showing payments by defendant's ancestor to one under whom plaintiff claimed executed more than 30 years before trial held admissible as ancient documents; such receipts having been attached to a deposition taken in another cause wherein they had remained on file for more than 10 years.

9. WITNESSES ⊜═130, 164(2)—TESTIMONY BY HEIR AS TO EXISTENCE OF LOST CONVEYANCE EXECUTED TO HIS ANCESTOR.

In trespass to try title, where defendants relied on a lost deed, testimony by one of the defendants that he saw and read the deed which conveyed the premises to his father, and from whom he inherited an interest, is admissible, despite Rev. St. 1911, art. 3690, declaring that in actions by or against executors or administrators or guardians in which judgment may be rendered for or against them as such neither party shall be allowed to testify as to any transaction with or statement by the testator, intestate, etc.

10. EVIDENCE ⊜═471(26) — CONCLUSION OF WITNESS AS TO TITLE.

Testimony that a witness knew his father acquired the interest of another in land, that he was present when the purchase was made, and knew of the transaction, cannot be excluded as a conclusion.

11. EVIDENCE ⊜═178(4)—PAROL EVIDENCE AS TO LOST CONVEYANCE.

Testimony that witness was present and knew of the transaction by which his father acquired title to land, it being asserted that the deed had been lost since the father's death, cannot be excluded as an effort to prove conveyance of real estate by parol testimony.

12. TRIAL ⊜═352(4)—SUBMISSION OF ISSUES AS TO EXECUTION OF LOST DEED.

In trespass to try title, where defendants relied on lost deed, and the only admissible

testimony showed that the grantor had conveyed all of her interest in one tract except one league, while inadmissible testimony was. that the lost instrument included all the grantor's interest in another tract except one league, it was proper to exclude a special issue relating to conveyance of "all her interest" in the second tract.

**13. TRIAL ⚸352(4)—CONFORMITY OF SPECIAL ISSUES TO ISSUE INVOLVED.**

In trespass to try title, where plaintiff sought to recover lands in one tract which defendants claimed had been conveyed to their ancestor by lost deed, the refusal of the court to submit a special issue as to conveyance of another tract was proper.

**14. VENDOR AND PURCHASER ⚸232(8) — KNOWLEDGE OF PURCHASER OF PRIOR POSSESSION UNDER UNRECORDED INSTRUMENT.**

Where plaintiff, knowing that others had open and notorious possession of a portion of the premises, acquired a claim to lands, for the purpose of asserting in judicial proceedings title so acquired, he cannot be deemed a bona fide purchaser, though the deeds under which defendants claimed title were not recorded.

**15. VENDOR AND PURCHASER ⚸232(10)—PRIOR POSSESSION BY TENANT IN COMMON NOTICE TO PURCHASER.**

Though defendants might be regarded as tenants in common of plaintiff's grantor, their visible and notorious possession was sufficient to put plaintiff on notice and prevent him from being a bona fide purchaser, even though the conveyances under which defendants claimed were unrecorded.

**16. TRIAL ⚸141—FINDINGS OF FACT BY COURT ON UNDISPUTED EVIDENCE.**

In action of trespass to try title, it was not improper for the court to declare facts properly in evidence and undisputed as part of his findings without submitting the matter to the jury.

**17. TENANCY IN COMMON ⚸15(11)—DURATION OF ADVERSE POSSESSION JURY QUESTION.**

Where a tenant in common takes adverse possession of land, notoriously using and enjoying it adversely and claiming to own it, it becomes a question of fact for the jury as to whether limitations are not in favor of such tenant.

**18. TENANCY IN COMMON ⚸32—SHARING OF EXPENSES ON PARTITION.**

Where an ousting tenant in common incurred necessary expenses in defending common title, other tenants in common on obtaining partition must bear their just proportion of such expenses.

**19. ADVERSE POSSESSION ⚸115(7)—EXTENT OF POSSESSION JURY QUESTION.**

In trespass to try title, where plaintiff, among other things, relied on adverse possession, *held* that the question whether he had perfected an adverse title to the entire premises, though he was only in possession of a portion, and did not render the whole for taxes, was for the jury.

**20. APPEAL AND ERROR ⚸1051(2)—ADMISSION OF EVIDENCE HARMLESS ERROR.**

The erroneous admission in evidence of a deposition is harmless where the testimony related to an issue proven by the undisputed evidence.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Trespass to try title by.Francisco Martinez against A. M. Bruni and others. From a judgment for only part of the relief sought, plaintiff appeals. Affirmed.

H. G. Dickinson, of Laredo, for appellant. Greer & Hamilton, of Laredo, Hicks, Phelps, Dickson & Bobbitt, of San Antonio, and T. C. Mann, of Laredo, for appellees.

COBBS, J. Francisco Martinez brings this suit in the ordinary form of an action in trespass to try title against A. M. Bruni, M. D. Slator, Henry Hein, Antonio Martinez, Jose Maria Martinez, Epigmenio Martinez, Jesus Martinez, Procesco Martinez, A. M. Gonzales, Jose Maria Uribe, Margarito Uribe, Manuel Maria Uribe, and Dolores Perez. Appellant dismissed as to Antonio Martinez, Jose Martinez, Epigmenio Martinez, A. M. Gonzales, and Manuel Maria Uribe. The appellant alleges he is the owner of an undivided interest to the amount and extent of 128,520 acres in that tract of land situated in the counties of Webb and Zapata which is described by metes and bounds out of the Borrego grant. He claims also title to the two tracts of land consisting respectively of 2,896 acres and 29,346 acres under and by virtue of the statute of limitations of three years and ten years, all out of the Jose Borrego grant. He prays judgment for title and possession of his undivided interest, including his title by limitation to said two tracts.

A. M. Bruni, one of the appellees, filed his answer, containing exceptions general and special, a plea of "not guilty," and pleas claiming certain portions of the land under the five and ten year statute of limitations.

Dolores Perez, another appellee, filed answer, containing plea of not guilty, and pleaded the statute of limitations of five and ten years to portions of the land.

Henry Hein, another appellee, filed answer claiming an undivided interest in the land sued for consisting of about 1,600 acres.

Jesus Martinez, Procesco Martinez, Jose Maria Uribe, and Margarito Uribe filed general exceptions and pleas of "not guilty."

M. D. Slator, one of the appellees, filed answer which contained a disclaimer to all the land except four leagues described by metes and bounds, and a general denial, plea of not guilty, and a plea of five and ten year statute of limitations, and further a plea of estoppel.

This case was by the court submitted to the jury at the request of appellant upon special issues.

The appellant caused the suit to be dismissed as to Antonio Martinez, Jose Martinez, Epigmenio Martinez, A. M. Gonzales, and Manuel Maria Uribe.

Upon the findings of the jury and upon an additional finding made therein the court entered a judgment that appellant, Francisco Martinez, take nothing by his suit under his claim for an undivided interest in the land sued for, but that under his plea of the statute of limitations of ten years he recover 160 acres of land out of the Jose Borrego grant, to include when partitioned the 50 acres occupied by Victor Pena as tenant of appellant, together with improvements.

All the facts were submitted to the jury, and the judgment of the court must be affirmed unless there is properly assigned some error of law committed by the court in the trial of the case.

[1, 2] The first error assigned is to the charge of the court to the effect that, when a deed has been executed and delivered, but lost without having been recorded, its execution and delivery and loss may be proved by parol, and further:

"If the jury do not believe from the evidence that such deed ever existed, then no rights can be established under it."

And the second assignment of error, which we will consider together, is:

"In its charge to the jury the court submitted the following special issue, the same being specified as 'second question,' viz.: 'Do you or do you not find that Maria de Jesus Pena Vidaurri on or about the year 1879 or 1880 executed and delivered a deed to Lauriano Vidaurri conveying to him all her interest in the Borrego grant except one league? Answer 'We do' or 'We do not.' To which question the jury in their verdict answered, 'We do.' The court erred in submitting this special issue to the jury because there was no predicate laid by any evidence for introduction of secondary evidence for the purpose of proving the existence, execution, delivery, and contents of the alleged lost deed from Maria de Jesus Pena Vidaurri to Lauriano Vidaurri, purporting to convey to him all her interest in the Borrego grant of land except one league."

The error claimed in each of the assignments is that no proper predicate was laid for the introduction of secondary evidence for the purpose of proving the existence, execution, delivery, and contents of the alleged deed from Maria de Jesus Pena Vidaurri to Lauriano Vidaurri, purporting to convey to him all her interest in the Borrego grant of land except one league. The substance of the testimony of Juan Vidaurri is that he was a son of Lauriano Vidaurri, who died in 1882, and of Trinidad Cuellar de Vidaurri, who died in 1912 or 1914; that he knew something of the transaction between his father and Maria de Jesus Pena y Vidaurri, who sold all her right in the Borrego tract, with the exception of one league, for the sum of $320, saw the document, and his father explained everything to him. The document was white paper. He saw it at Corralitos at his father's home, and it was by him kept with other papers. At the time his father was reading papers, and he drew near and saw it. The name of Maria Jesus Pena y Vidaurri was signed to the deed as the seller, and Antonio Navarro's name was on it, who at the time was the county judge. First saw it in 1879 or 1880. The paper was stolen because some thieves in 1884 or 1885 took a box of jewelry away in which the paper was, and they were never recovered. An effort was made to catch them, but they crossed the Rio Grande river to Mexico. A proper affidavit was filed of its loss, and further sufficient proof made that proper search was made and further testimony of its existence and loss made. The bill of exception does not complain so much at the predicate laid as it does at the action of the court in refusing to allow appellant to rebut the predicate, which the court refused at that time, and qualified the bill in several particulars. One was that defendants stated they would offer on the trial other additional evidence to support their contention, and the court further said he could determine whether a proper predicate was laid just as well in the presence of the jury as elsewhere, and they were recalled, and the introduction of testimony proceeded.

We think the predicate was sufficient to permit the testimony, with such other testimony afterwards introduced, to go before the jury. In the preliminary examination of a witness in the first instance to establish a predicate for the introduction of testimony to establish the existence, loss, or destruction of a record it is a matter addressed to the sound discretion of the court. This is purely a question of law. Mays v. Moore, 13 Tex. 88; Waggoner v. Alvord, 81 Tex. 367, 16 S. W. 1083. However, no injury resulted to appellant, as all the evidence on the subject of the existence and loss of the instrument was finally before the jury, and nothing to show the action of the court was arbitrary and in any way hurtful.

[3] The third assignment complains that the court erred in not allowing him to call witnesses to be used in rebuttal to the testimony of Juan Vidaurri on his preliminary examination for the introduction of testimony to prove existence and loss of the deed. It does not appear that he was denied ultimately to introduce all this rebuttal testimony. From what we have just said it was not error to have heard such portion of the evidence at that time, as it had to again be heard when the jury was present. It

was purely a matter for the court, and it is not complained that he abused his discretion in any way, and the first, second, and third assignments are therefore overruled.

[4] In the sixth assignment complaint is made of the action of the court in submitting the issue to the jury as to whether or not the deed ever existed and was lost without being recorded, and that its execution and delivery may be proved by parol evidence, and likewise its contents be proven by parol evidence, "but, if they do not believe such deed ever existed, then no rights can be established under it"; the objection being that there is no legal, competent, or admissible evidence that Clara de Jesus Pena Vidaurri, under whom plaintiff claims title, by herself or by any person authorized by her, ever executed and delivered either in her own name or in the name of Maria de Pena Vidaurri the alleged lost deed purporting to convey to Lauriano Vidaurri all her interest in the Borrego grant of land, except one league. This assignment does not seem to question the charge in the abstract as a correct proposition of law, but that there was no evidence to support the issue that such a deed ever existed. We do not think any such error can be claimed under this general charge, instructing the jury upon purely a question of abstract law, unless it is itself challenged as an erroneous proposition of law and hurtful to appellant.

[5] The question complained of in the above assignment is now raised in the fifth and sixth assignments in the objection to the special issue given by the court to the jury, to wit:

"Do you or do you not find that Maria de Jesus Pena Vidaurri on or about 1879 or 1880 executed and delivered a deed to Lauriano Vidaurri conveying to him all her interest in the Borrego grant except one league? Answer: 'We do' or 'We do not.'"

—the contention being expressed as follows:

"The court erred in submitting this special issue to the jury because there was no legal, competent, or admissible evidence that Clara de Jesus Pena Vidaurri, under whom plaintiff claims title, by herself or by any person authorized by her, either in her own name or in the name of Maria de Jesus Pena-Vidaurri, ever executed and delivered to Lauriano Vidaurri, the alleged lost deed conveying to him all her interest in the Borrego grant of land except one league."

The first because there was no legal evidence offered, and the sixth finding was "against the preponderance of the evidence, and there was no competent or legal evidence to support it." These terms are rather contradictory.

We have carefully read the testimony of the witnesses, and there is enough evidence to go to the jury tending to show that the deed from Maria de Jesus Pena Vidaurri to Lauriano Vidaurri existed whereby Maria de Jesus Pena conveyed to Lauriano Vidaurri all her interest in the Jose Vasquez Borrego tract of land except one league purchased by A. M. Bruni in 1888.

In the case of Trimble v. Edwards, 84 Tex. 500, 19 S. W. 773, the court, in speaking of the rule and what is necessary to be done to establish the existence of a lost deed, says:

"When secondary evidence of a deed that has been lost or destroyed is offered, it is not necessary to file a preliminary affidavit of the loss or destruction. The evidence of a witness on the stand instead of the affidavit will be sufficient. Parks v. Caudle, 58 Tex. 220. But, in order that secondary evidence of the execution and contents of such a deed may become admissible, it must be shown 'that there has been diligent search and inquiry made of the proper person and in the proper places for the lost deed; that the loss must be proved, if possible, by the person in whose custody it was at the time of the loss, if such person be living, and, if dead, application should be made to his representatives and search made among the documents of the deceased.' Vandergriff v. Piercy, 59 Tex. 372; Hill v. Taylor, 77 Tex. 299 [14 S. W. 366]. The evidence does not show that any application was made to Mrs. Shaddinger for the deed, nor even that it may not have been in the possession of the plaintiff himself. As a predicate for the admission of evidence as to the contents of a lost deed the testimony was clearly insufficient, although Mrs. Shaddinger may have been shown to be beyond the process of the court."

Ordinarily it requires a diligent search and inquiry to be made of the proper person and in the proper places and that the loss be proved by the person in whose custody it was at the time of loss or when last seen, if such person be living, or application should be made to his representatives to search among his documents, if the person be dead. The testimony of Juan Vidaurri showed that the house was robbed, and it was probable the deed was stolen with jewelry with which it was kept in a box belonging to the family in a house where they were living, by robbers, whom they pursued to the Mexican side, and nothing was recovered, and they have never seen the deed or other property since. He testified at the time of the robbery in 1884 or 1885 at night his mother and sisters were in the house at the time it was robbed, but he and his brother were absent, but his father was dead, having died in 1882. This testimony was fully corroborated by other witnesses to the same effect. A. M. Bruni testified:

"I caused a search to be made for that deed. I went to see if they could find the deed, and I had Atlee, the attorney, to go down to the record of Zapata county and look for the deed, and he looked on the record, and the deed was not found, as well as in this county. I made inquiry of the Vidaurri family for it, but I did not obtain it from them."

We think the proof of the existence, loss, and search of the deed was sufficiently established, and no further search was required; for it sufficiently shows it had been stolen, and members of the family and household made every effort to restore it. The law only demands, as said in Waggoner v. Alvord, supra, that a party in good faith exhaust reasonably all the sources of information and means of discovery which the nature of the case would naturally suggest and which we're accessible to him. The law in such cases, or in any. case, will not require an unreasonable and useless thing to be done as a preliminary step to lay a predicate for the introduction of testimony, but leave it as a matter of law rather to the sound discretion of the judge trying the case. M., K. & T. Ry. Co. v. Dilworth, 95 Tex. 332, 67 S. W. 88.

[6] The seventh and eighth assignments complain that the court erred in permitting defendants to use and read on the trial of the case the deposition of Trinidad Cuellar taken in cause No. 2369 on the docket of the district court of Webb county, Tex., entitled Francisco Martinez v. A. M. Bruni et al., because taken in a different case from this, and not filed among the papers of this suit until the 4th day of December, 1918, the day on which the case was called for trial, and no notice given that such deposition would be offered.

The question, as we understand it, is no longer an open one in this state, and is settled by the decision in People's Nat. Bank v. Mulkey et al., 94 Tex. 395, 60 S. W. 753, and followed and cited in numerous cases, some of which are Dawedoff v. Hooper, 190 S. W. 523; Castleberry v. Bussey, 166 S. W. 17; Parlin & Orendorff v. Vawter, 39 Tex. Civ. App. 520, 88 S. W. 407; Rucker v. Carr, 163 S. W. 633.

Appellees rely upon the case of St. L. S. W. Ry. Co. v. Hengst, 36 Tex. Civ. App. 217, 81 S. W. 833, to support their contention and to differentiate the two cases. In the Hengst Case there was but one suit filed, and depositions were taken in that case. Hengst died, and his children made themselves parties. It is true there were amendments filed, but it was always the same one identical suit originally instituted by himself and prosecuted to judgment.

Besides, if Judge Brown had not intended to hold as he did and overrule, and not follow, Emerson v. Navarro, 31 Tex. 338, 98 Am. Dec. 534, he would have made some allusion to that holding. itself independently, and not simply disposed of it by citing Peck v. San Antonio, 51 Tex. 490, holding that court was not a constitutional court, and should not be regarded as authority. This is only mentioned to intensify the ruling that our Supreme Court meant to hold, as it did, that the deposition taken in one case could not be used in another. No depositions, in view of the contrary holding to Emerson v. Navarro, taken in one case under our statutes, therefore, are admissible and can be used in another case. This was laying the rule down broadly, but was following the plain. language of our statute. We therefore hold the court erred in admitting the deposition per se over appellant's objection.

[7] In the same assignment, and presented in the third proposition, appellant claims the court erred in allowing the introduction of tax receipts issued by the tax collector of Zapata county, Tex., for payment of taxes on one league of land situated in that county, one for the year 1879 issued to Ma. de Jesus (V.) Pena, one for the year 1880 issued to Pena Ma. de Jesus (V.), one for the year 1881 issued to Jesus Pena Vidaurri, one for 1882 issued to M. Jesus Pena Vidaurri, and one for the year 1883 issued to Ma. Jesus Pena Vidaurri, showing payment of taxes on one league of land situated in the Jose Vasquez Borrego tract of land in Zapata county; the objection being (a) no proof of their execution; (b) no proof of identity of person to whom issued; (c) not competent, because parts of deposition taken in another case. We think, independent of the deposition, the tax receipts were admissible to go to the jury for what they were worth, in connection with all the testimony. They sufficiently identified the person paying by name and the land grant. Being issued by the officer authorized to issue tax receipts in the county, and taking into consideration their age, execution thereof was sufficiently established. Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734. Tax receipts, though admissible, are not conclusive. Seemuller v. Thornton, 77 Tex. 157, 13 S. W. 846; Brymer v. Taylor, 5 Tex. Civ. App. 105, 23 S. W. 635. We overrule this assignment.

The ninth assignment of error complains that the court erred in allowing Trinidad Cuellar Vidaurri to testify by deposition that her husband, Lauriano Vidaurri, bought the right of Maria. de Jesus Pena Vidaurri to the Corralitos lands, and that she made her husband a deed which was lost when their house was robbed, because it was "in reference to transaction with decedent, Maria de Jesus Vidaurri, alleged to be the same person known as Clara de Jesus Pena Vidaurri, then deceased, under whom plaintiff claims title," as prohibited from testifying under the provisions of article 3690 of the Revised Civil Statutes of Texas. No objection is here urged against the testimony because the deposition was taken in a different suit from this, but that objection is raised to it in the tenth assignment.

We sustain the last assignment, under the authority of Bank v. Mulkey, 94 Tex. 395, 60 S. W. 753, and for the reasons given heretofore in sustaining same objection, raised

in seventh and eighth assignments heretofore discussed, in admitting the deposition.

[8] In the eleventh assignment of error appellant complains the court erred in permitting the introduction of an alleged letter of Maria de Jesus P. Vidaurri to Lauriano Vidaurri, dated April 1, 1879, and the alleged receipt of Maria de Jesus Pena Vidaurri, acknowledging receipt of $140 from Guadalupe Ortiz, because a part of the deposition of Trinidad Vidaurri taken in another suit, and because there was no proof of the execution of said instruments. These receipts were attached to a deposition taken in another case and in the same court and filed therein on the 6th day of November, 1909, of which appellant was plaintiff in a suit brought by him for same land or part and same parties defendant or those in privity with appellant, and remained on file in the proper custody (of the court) until introduced here. Outside of the fact they are shown to be attached to depositions taken in another case in the same court where they remained on file for some ten years, we think they come as ancient documents free from suspicion to such an extent as justified the court in permitting them to go to the jury as a circumstance for what they are worth. Ballard v. Carmichael, 83 Tex. 359, 18 S. W. 734; Holt v. Maverick, 5 Tex. Civ. App. 650, 23 S. W. 751. In the last-named case, by this court, there is a very full discussion as to the admissibility of such instruments. There was no error in allowing them to go before the jury; they proved themselves as ancient documents. This assignment is overruled.

[9] In the twelfth assignment appellant complains it was error to allow Juan Vidaurri to testify that he saw and read an instrument purporting to be a deed of Maria Pena Vidaurri conveying to his father all her interest in the Vasquez Borrego grant of land except one league, dated about 1879 or 1880, because no predicate was laid and because he was a son of Lauriano Vidaurri, deceased, from whom he inherited an interest he thereafter conveyed to defendant A. M. Bruni, being in reference to transactions with a decedent, Maria de Jesus Pena Vidaurri, known as Clara de Jesus Pena Vidaurri, then deceased, under whom plaintiff claims title, as prohibited by the provisions of article 3690, Revised Stat. The assignment does not make clear appellant's objection. The inhibition contained in the statute is:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party."

By no possible construction of the statute can it be made to apply here. It is not an action against executors, administrators, or guardians in which a judgment may be rendered for or against them as such, and does not come within the prohibition that would not allow the party to testify as to any transactions with or statements by the testator, intestate, or ward, so that a judgment might be rendered against him in the above capacity. Newton v. Newton, 77 Tex. 508, 14 S. W. 157; Ferguson v. Coleman, 208 S. W. 571. This assignment is overruled.

The thirteenth to nineteenth assignments raise practically the same question in respect to the testimony of other witnesses similarly situated and related, and they are severally overruled.

The appellant in his nineteenth assignment complains that the court erred in the special issue No. 5 submitted to the jury, as follows:

"Did A. M. Bruni have peaceable and adverse possession and cultivate, use, and enjoy any lands on the Dolores or Corralitos portions of the Borrego grant? Answer 'Yes' or 'No.' "

This was followed up by the sixth question, as follows:

"If you answer No. 5 'Yes' (meaning by No. 5 the question as to the peaceable and adverse possession of A. M. Bruni), then state how many acres of land were so possessed and used by said Bruni, describe the same and state the length of time it was so possessed and used, giving the dates of such possession and use."

Special issue No. 5 appellant sets out in his nineteenth assignment, and special issue No. 6 in his twenty-fourth assignment. We see no reason for so separating them, and shall consider both together, as the propositions thereunder and objections made are practically the same. It is not claimed they were not in form correct propositions of law, but that the evidence itself was not sufficient to support the pleas of limitation, and, as the same questions are raised in regard to the other defendants, we here set out the charge of the court in respect to the balance, with the answers of the jury thereto and the special finding of the court in the judgment:

To the fifth question, above set out, the jury answered: "Yes."

To the sixth question, also copied herein, the jury answered: "97,663.4 acres, known and described as the following ranches or pastures: La Perla, containing 49,655 acres, in his possession since 1887. Tule, containing 6,088 acres, in his possession since 1893. Cabezon, containing 7,732 acres, in his possession since 1897 or 1898. Salledor, containing 16,446 acres, in his possession since 1898. Rega, containing 6,573 acres, in his possession since 1898. Burrito, containing 5,311 acres, in his possession since 1898 or 1899. A. M. Bruni has continuously possessed and used all the lands above described from the dates mentioned opposite

each described tract in this answer, up to and including the present date.

Seventh Question. "Did Dolores Perez have peaceable and adverse possession and cultivate, use, or enjoy any land on the Dolores and Corralitos portions of the Borrego grant? Answer 'Yes' or 'No.'"    Answer: "Yes."

Eighth Question. "If you answer No. 7 'Yes,' then state how many acres of land were so possessed and used by said Dolores Perez, describe the same, and state the length of time it was so possessed and used, giving dates of such possession and use."    Answer: "4,000 acres described by metes and bounds as set out in the surveyor's field notes in her petition as offered in evidence, and known as La Muralla ranch, of which she has been in continuous possession of and used from 1891, or 1892, when it was fenced up to the present time."

Ninth Question. "Did the defendant M. D. Slator and those under whom he claims the land described in his first amended original answer claim said land under deeds duly registered and have peaceable, continuous, and adverse possession of the land claimed in the first amended original answer of said Slator, using and enjoying the same and paying all taxes due thereon for a period of more than five years after plaintiff's cause of action accrued and before the commencement of this suit? Answer 'Yes' or 'No.'"    Answer: "Yes."

Tenth Question. "Did the defendant M. D. Slator and those under whom he claims have peaceable and adverse possession by actual inclosure of the land described in his first amended original answer, using and enjoying the same for a period of ten consecutive years after plaintiff's cause of action accrued, and before the commencement of this suit? Answer 'Yes' or 'No.'"    Answer: "Yes."

Eleventh Question. "Did the defendant M. D. Slator and those under whom he holds and claims title, claiming to have good and perfect right and title to the land described in his first amended original answer, being a part of the lands and tenements claimed in plaintiff's petition, have and hold peaceably the land claimed and have adverse possession of same for a period of more than ten years after plaintiff's cause of action accrued and before the commencement of this suit, taken and held under a deed or deeds specifying the boundaries of said tract, and duly recorded in the deed records of Webb county? Answer 'Yes' or 'No.'"    Answer: "Yes."

Twelfth Question. "Did A. M. Bruni and the others named in the deeds to A. L. McLane and E. A. Atlee, offered in evidence by M. D. Slator, convey said four leagues of land to said A. L. McLane and E. A. Atlee for services in clearing up and defending the title to the Jose Vasquez Borrego grant?    Answer 'Yes' or 'No.'"    Answer: "Yes."

Thirteenth Question. "Did plaintiff or those under whom he claims pay any part of the expenses incurred in defending the title to the Borrego grant by those who executed deeds to McLane and Atlee?    Answer 'Yes' or 'No.'"    Answer: "No."

Fourteenth Question. "If you have found that the services of an attorney were needed to defend and protect the title to said Borrego grant or any part thereof, and McLane and Atlee were employed to render such services by A. M. Bruni and some of the other parties interested in said land, and that neither the plaintiff nor those under whom he claims contributed any part of said expenses of defending said suits against those holding under Jose Vasquez Borrego, then state if the compensation given McLane and Atlee for the services rendered in defending said suits was a reasonable compensation for their services, considering the work done and the value of the land at the time of such suit?    Answer 'Yes' or 'No.'"    Answer: "Yes."

Fifteenth Question. "If you answer questions Nos. 1 and 2, 'We do not,' then answer this question: What was the undivided interest in acreage of Clara de Jesus Pena Vidaurri in the Dolores and Corralitos tracts of land, considered as a whole, inherited by her from her parents, Hipolito de la Pena and Antonina Vidaurri?"

Sixteenth Question. "What undivided interest in acreage, if any, did Clara de Jesus Pena Vidaurri have in the Dolores and Corralitos tracts of land, taken as a whole, at the time of her death in May, 1888?" Answer: "None."

"In addition to the finding of the jury, the court finds from the undisputed evidence in this case that, when Lauriano Vidaurri purchased the land from Maria de Jesus Pena Vidaurri described in the deed made in 1879 or 1880, then he went into immediate possession of said land; that upon his death in 1882 his heirs continued to possess said land, and that, when in 1885 said heirs sold said land to the defendant A. M. Bruni, the defendant A. M. Bruni went in actual and visible possession of said land, and has ever since continued in such actual and visible possession thereof."

[10, 11] The fifteenth assignment of error, which claims "that the testimony of Basilio Vidaurri that his father, Lauriano Vidaurri, purchased all her interest in the Vasquez Borrego grant except one league of land about the year 1879 or 1880 was a conclusion of the witness and an effort to prove the conveyance of real estate by parol testimony," is overruled.    He testified he was present when the purchase was made and knew of the transaction.

It is complained in the sixteenth assignment the court erred in permitting Ignacio Vergara to testify:

"That Lauriano Vidaurri purchased from Maria de Jesus Pena Vidaurri all her interest in the Vasquez Borrego grant except one league of land, and that she told him that she had sold all her interest except one league to Lauriano Vidaurri, about the year 1879 or 1880, and that the consideration for said purchase was the sum of $320, paid partly in money and in steers," because (a) no predicate was laid, (b) conclusion of witness, and (c) an effort to prove conveyance of real estate by parol testimony."

For similar reason already given this assignment is overruled.

The court made the following indorsement on the bill of exception:

"On the question of predicate for the introduction of oral testimony proving the deed from

Maria de Jesus Pena Vidaurri to Lauriano Vidaurri for all her interest in the Borrego grant, except one league, said deed being dated about the year 1879 or 1880, the defendant A. M. Bruni made and filed among the papers of the cause, same being included in the transcript in this cause, an affidavit as to the loss of said deed as is provided by statute. The witness Juan Vidaurri testified as to the making of said deed and as to its loss. The witness A. M. Bruni testified before the court and jury as to the loss of said deed and to the search that he had caused to be made for the same in the proper places, and the witness Trinidad Cuellar y Vidaurri testified by depositions that Maria de Jesus Pena Vidaurri had made such a deed, and that the same was lost when their house was robbed."

The seventeenth assignment presents a similar objection to the testimony of Pablo Navarro, which for same reason is likewise overruled.

The eighteenth assignment makes a similar objection to the testimony of Escolastica G. de Navarro, which for the same reason is overruled.

[12] The twenty-sixth assignment of error complains of the refusal of the court to give the jury the following special requested issue:

"Did Clara de Jesus Pena Vidaurri, by herself or by any person duly authorized by her, ever execute and deliver a deed to Lauriano Vidaurri, conveying to him all her interest in the Corralitos tract of land, except one league? Answer this question 'Yes' or 'No,' and if you answer 'Yes,' state when or about what time the deed was executed and delivered."

Overruled because Juan Vidaurri and Procesco Martinez testified the lost deed conveyed all interest of Maria de Jesus Pena Vidaurri in the Borrego grant except one league, and Trinidad Cuellar Vidaurri testified it was to the Corralitos lands. The testimony of Trinidad Cuellar Vidaurri appears in the deposition taken in another case, which for that reason cannot be considered, and upon appellant's own objection should have been excluded.

[13] In the second question the court submitted to the jury the question:

"Do you or do you not find that Maria de Jesus Pena Vidaurri on or about the year 1879 or 1880 executed and delivered a deed to Lauriano Vidaurri conveying to him all her interest in the Borrego grant except one league of land? Answer 'We do' or 'We do not.' "

At the same time and in the same paper requesting special issues appellant requested the court to instruct the jury:

"Did Clara de Jesus Pena Vidaurri, by herself or by any person duly authorized by her, ever execute and deliver a deed to Lauriano Vidaurri, conveying to him all her interest in the Vasquez Borrego grant of land, except one league? Answer this question 'Yes' or 'No,'

and if you answer 'Yes,' state when or about what time the deed was executed and delivered."

To have given these two special issues perhaps would have been confusing to the jury. The same matters requested in the second was practically given by the court. What useful purpose would have been served by giving the first one as to the Corralitos lands or how appellant was injured by the refusal we cannot see. Appellant sought to recover lands out of the Borrego grant, and the Corralitos lands were a part of that grant, and the charge, if given, would not have aided the jury in locating appellant's land, or in any way assist the appellant in the recovery of any land sued for, but would have tended to mislead and confuse them.

This assignment is overruled.

The twenty-seventh assignment practically is to the same effect, except it puts the issue in the alternative as to "any land on the Dolores or Corralitos parts of the Borrego grant." This charge designating Corralitos therein was shown by the evidence a mere designation of a portion of the named Borrego grant sued for by appellant as such and not disputed by any one, and there was no possible injury shown committed by refusing this charge. These claimed errors were in fact disposed of by the third question submitted by the court and the finding of the jury thereon, to wit:

"Did Victor Pena, and after him Francisco Martinez, have peaceable and adverse possession and cultivate, use, or enjoy any land on the Dolores or Corralitos parts of the Borrego grant? Answer 'Yes' or 'No.' "

And the fourth question:

"If you answer No. 3 'Yes,' then state how many acres of land were so possessed and used by said Pena and Martinez, describe the same, and state the length of time it was so possessed and used, giving the dates of such possession and use?"

To which the jury answered:

"To the third question we answer 'Yes.' To the fourth question we answer, 'About 50 acres in his possession since 1904 and up to the present times.' "

These two special charges and answers thereto dispose of those assignments, and they are overruled.

[14, 15] The twenty-eighth assignment of error complains of the court in refusing to give the following special issue:

"Did Francisco Martinez, plaintiff, at the time of the execution of the deed from Victor Pena to him, date June 1, 1899, have any notice of the execution of any deed by Clara de Jesus Pena Vidaurri, conveying all her interest in the Dolores and Corralitos tract of land except one league to Lauriano Vidaurri?"

The testimony all showed that plaintiff knew that the defendants were in possession

of various tracts of land on the Borrego grant, claiming it by improvements, use, and occupation and paying taxes, so that by use of any diligence he would have known it. He testified himself he paid no money for the land, but at his own cost, expense, and labor would prosecute legal proceedings to recover, and, when recovered, would pay $1,500, and then give him the ranch where he lives. He then began and performed various legal services and commenced legal proceedings looking to the recovery of the land, and in so doing paid out and incurred costs and various expenses. What effect the want of notice of the lost deed would have upon appellant, except under a plea of purchaser in good faith for value without notice, we cannot perceive. He has made no such issue by proper pleading. If he was put upon any inquiry by the adverse claims of appellees or any one, he was required to follow it out. But he did know of adverse claims, for he made his purchase with the view of instituting the very proceedings he did, to recover this very land. He occupied a portion of the grant for a period of time himself long enough to toll limitations to a portion thereof, and could not close his eyes to the holding of the others on the very grant he was getting ready to recover; hence to have submitted that issue would have served no useful purpose. The court found as an undisputed fact from the evidence:

"In addition to the findings of the jury the court finds from the undisputed evidence in this case that when Lauriano Vidaurri purchased the land from Maria Jesus Pena Vidaurri, described in the deed made in 1879 or 1880, that he went into immediate possession of said land; that upon his death in 1882 his heirs continued to possess said land, and that in 1885 said heirs sold said land to the defendant A. M. Bruni; that the defendant A. M. Bruni went into actual and visible possession of said land, and has ever continued in such actual and visible possession thereof."

The visible possession of the defendants, though they may be regarded as cotenants holding under unrecorded deeds, was sufficient to put plaintiff on notice, and he could not have been a bona fide purchaser. Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184; Boedefeld v. Johnson, 201 S. W. 1027.

[16] The twenty-ninth assignment complains of the findings of fact of the court as shown by the judgment and set out above under the foregoing assignment. As the finding is supported by the evidence, we can see no reason why the court may not so declare facts properly in evidence and undisputed as a part of his findings to support the judgment, and the assignment is overruled.

The thirtieth and thirty-first assignments raise issues already discussed, and are overruled.

The twenty-first and twenty-second assignments have to do with the issues raised between appellant and M. D. Slator, one of the appellees, and as he is represented by a different attorney, who has briefed his case separately, we consider it last. Most of the issues and testimony, however, are similar to those presented by other appellees.

The twenty-first complains of the court in submitting to the jury the five and ten year limitation defenses, paying taxes under deeds defining boundaries, and the twenty-second is:

"Did plaintiff or those under whom he claims pay any part of the expenses incurred in defending the title to the Borrego grant by those who executed deeds to McLane & Atlee? Answer 'Yes' or 'No.' "

To all the questions the jury answered "Yes" for this appellee.

[17] No objection is made that the charges do not submit correct propositions of law. The error claimed, however, seems to be that the appellee holds under and from A. L. McLane and E. A. Atlee, who were tenants in common with plaintiff, and therefore could not convey any specific lands held in common so as to bind plaintiff or those under whom he claims title, and therefore could not hold adverse possession against plaintiff. That is precisely what he could do, if the facts justify.

We think the agreement signed by all the parties practically establish his right to the land by limitations without going to the testimony, which testimony itself justified the finding of the jury for him. The agreement referred to is as follows:

"It was agreed that M. D. Slator claims title to the land described in his first amended original answer in this cause under and by virtue of a deed from A. L. McLane and E. A. Atlee, dated the 17th day of September, 1908, which deed has been duly recorded in Webb county and Zapata county, and from the date of purchase by said M. D. Slator he has held the same continuously until the present date in peaceable and adverse possession as to all the parties, and that same has been continuously since said date inclosed by a good and substantial fence, with lots and barns located on said land, and since 1908 M. D. Slator paid all taxes due thereon as same accrued."

When a tenant in common takes adverse possession of land notoriously, using and enjoying it adversely and claiming to own it, then it becomes a question of fact for the jury to pass upon as to whether he has matured limitations. Houston Oil Co. of Tex. v. Davis, 181 S. W. 851; Gist et al. v. East et al., 16 Tex. Civ. App. 274, 41 S. W. 396.

It is held in De Leon v. McMurray et al., 5 Tex. Civ. App. 280, 23 S. W. 1038, a deed placed upon record conveying an entire tract made by a cotenant was notice to a cotenant of the repudiation of the cotenancy.

[18] In the twenty-second assignment above the contention practically is made by appellant that he was not properly chargeable as a cotenant with any part of the expenses in perfecting the common title, as there was no evidence to show he was ever consulted as to the employment of McLane and Atlee or ever knew anything about it.

The facts are:

"Appellant claims through Victor Pena, who claimed under a will made by Maria Clara de Jesus Pena Vidaurri. This will was not probated until just prior to the institution of this suit, and deed from Victor Pena to appellant was made only a short time prior to the institution of this suit. Maria Clara de Jesus Pena Vidaurri resided in Mexico and inherited her interest in the grant. There is nothing to show that any of the tenants in common knew or thought of her having an interest or knew or was in any way charged with notice of the claim of Victor Pena when they contracted with McLane and Atlee to defend suits then pending against those claiming under and through Jose Vasquez Borrego. The validity of the grant was in dispute, and was to be passed upon by the courts in the causes then pending. McLane and Atlee were employed by a large majority of the tenants in common, if not all of them. to defend the title of said grant, and gave much time and arduous labor in protecting the rights of all those having an interest in the Borrego grant. If Victor Pena and Maria Clara de Jesus Pena Vidaurri were interested in the grant, they had derived the same benefits from the services rendered by said attorneys as any one else to the extent of their interest. The evidence of A. M. Bruni showed that the land was of little value at the time, and that, considering the work done by said attorneys, the compensation was to the interest of all persons interested to have the validity of the grant established."

The services performed were for the benefit of all the cotenants. This court held in Stephenson v. Luttrell, 160 S. W. 666:

"The question is not an open one in Texas, but it has been held by the Supreme Court: 'The court, in determining the rights of the parties, will adjust them upon the proper basis. It will deny to the ousting cotenant his claim to. the exclusive ownership of the property, but will enforce his true rights with respect to it; and, if he has discharged burdens which rested alike on the whole estate, it will require his cotenants, when they seek partition and settlement with him, to bear their just proportion of such burdens, requiring him, at the same time, to account for any benefits in excess of his just share which he has received from the estate.'"

See Corpus Juris, vol. 13, p. 828; Estill's Trustees. v. Francis (Ky.) 89 S. W. 172.

Of course, such claim would be protected in any equitable adjustment between the parties or in any partition. It will be borne in mind, too, the jury found against appellant on any title except limitation.

We overrule the assignments.

The evidence introduced was properly allowed to go before the jury and be considered by them, and was sufficient to sustain their findings in favor of each defendant. As we have fully·considered the objection of appellant to the evidence and its admissibility presented under each assignment, and held with the trial court, it would make this opinion too long and serve no useful purpose to set it out at length.

[19] Appellant bases his claim to an undivided interest in the Borrego grant under the will of Clara de Jesus Pena y Vidaurri. The evidence, without the deposition, in effect, was that she parted with the title thereto by conveying all of her interest, except one league, to Lauriano Vidaurri.

A. M. Bruni exhibited title by deeds from Trinidad Cuellar Vidaurri, widow of Lauriano Vidaurri, and children. After that sale she only rendered one league for taxes out of the Borrego grant. She sold the one league mentioned to said A. M. Bruni; then rendered no more of that land ever afterwards for taxes. The date of this sale was June 8, 1887. She made a will on July 8, 1884, by the terms of which she devised her interest in the land in controversy to Victor Pena and others, who conveyed to·Victor Pena, who in turn conveyed, or contracted, it to appellant. She died in 1898. At the time 'of her death, the time the will took effect, she had no interest in the land in controversy, as shown, for she had parted with all of her title.

The existence of the deed independently of the depositions was established by the testimony of about six uncontradicted witnesses. Likewise the possession and limitation was established without any reference to and partly subsequent to the deposition. So, for the consideration of this case, that deposition may be laid entirely out of sight.

As to the language and recitals of the will of Clara de Jesus Pena y Vidaurri, under whom appellant holds, dated the 8th day of July, 1884, made at her home where she resided in the city of Mier, state of Tamaulipas, in which she declared among the property which she actually possessed is the following:

"A tract of land known by the name of Dolores, whose amount or extent she cannot at present moment state, said land being in the state of Texas, of the United States of America, and in the counties of Zapata or Webb, which belongs to the party speaking by inheritance from her father, the aforementioned Don Hipolito de la Pena, who obtained it by purchase from Don Margil Vidaurri and coheirs. A right to land in Corralitos. * * * Such right descended to her by inheritance from her mother, Dona Antonio Vidaurri."

If such recitals could be considered for any purpose, it was before the jury. She disposed also of other property in her .will, not touching this grant. There is nothing material in those recitals that contradict the tes-

timony introduced. She owned land at that time. She declares she does not know the amount and did not undertake to state or define as she did not herself know. She rendered one league for taxes up to 1886. She sold the league to Bruni and rendered no more land in that grant for taxes thereafter. She lived and died in Mexico.

The issue was squarely submitted to the jury, "What undivided interest in acreage, if any, did Clara de Jesus Pena Vidaurri have in the Dolores and Corralitos tracts of land taken as a whole at the time of her death in May, 1888?" and the jury answered, "None." The testimony disclosed the Ratonis ranch in Zapata county as on the Borrego grant. The Borrego grant has three different tracts, to wit: San Ignacio, Dolores, and Corralitos. The only title by limitation shown by appellant's proof was under those who showed actual possession to about 50 acres on the Ratonis ranch, and constructive possession to a larger area, which was held by other defendants at the same time.

The plaintiff testified he—

"never rendered any of this land for taxes, because I am not in possession of the land; others are in possession, and I am waiting to take possession in order to pay taxes. I have never had any possession of the land since I bought it, only that piece I bought through Victor. I have never rendered it for taxes and have never paid the taxes, waiting for the verdict of this court."

He claims under two deeds, one dated June 1, 1899, reciting $1,500 paid, and one dated April 22, 1905, reciting $300 paid. Neither deed describes the land conveyed, but both an undivided interest in the lands in the Borrego grant, and the manner of the payment of the consideration was conditioned as stated, and he has never paid one cent taxes on it, and does not intend to unless he gets a verdict in his favor.

It was for the jury to say whether or not the appellant's adverse claim to use and occupation of the land he attempted to hold by limitations was consistent with his claims, whether he was "flying his flag" claiming against the whole world, or were his vendors to be deferred in the payment of the expressed consideration mentioned in the deed until a verdict could be had to ripen his possession in a title when he would settle up and pay taxes, too. Was it purely a speculative holding, a conditional and speculative limitation claim in which he recognized the adverse claims of others upon which he dared not to pay taxes until he might yet defeat by the verdict of a jury? At any rate all these questions were for the jury. Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793; Kirby v. Boaz, 121 S. W. 226.

It is contended by appellees that the admission of the deposition of the witness Trinidad Cuellar Vidaurri taken in a former suit should not cause a reversal, because her testimony relates to a matter established by the undisputed evidence. The right of recovery of appellees was made to depend on the title and possession, use, and occupation.

The court only submitted special issues on the claims set up by A. M. Bruni, Dolores Perez, and M. D. Slator, and therefore no error is assigned against the judgment, especially as to the following named defendants, who recovered under the general judgment, to wit: Jesus Martinez, Procesco Martinez, Jose Maria Uribe, Margarito Uribe, and Henry Hein. No brief is filed by Henry Hein, but the proof fully established his title to the land claimed by him. The court evidently regarded the issues submitted in respect to appellant's title and found against him established the rights of all of the other defendants, because there is a definite finding in the judgment in favor of appellant against each of said defendants named for 160 acres only. The appellant himself seems to take that view, as there are no special assignments raising any specific errors directed to the charge, except as to those named wherein special issues were submitted as to them, and the only general assignment that could be considered was that of a prayer in the stating part of the motion for new trial, that the judgment rendered on the verdict of the jury be set aside.

[20] As stated in the previous portion of the opinion, while the court erred in permitting the deposition taken in another case to be used in this, still, as the objectionable testimony related to an issue proven by the undisputed evidence, the error becomes harmless, and does not affect the ultimate result.

Having fully considered the case, we do not find any reversible errors assigned, and the judgment of the court is affirmed.